## FREEMAN v. MORROW.

(Court of Civil Appeals of Texas. Galveston. Feb. 22, 1913. Rehearing Denied March 27, 1913.)

1. MASTER AND SERVANT (§ 21*)—CONTRACT OF EMPLOYMENT — TERMINATION OF RELATION—GROUNDS.

Where a contract between a railroad's receiver and certain boilermakers and apprentices under which plaintiff was employed provided that no boilermaker or apprentice should be discharged without cause, the receiver was not authorized to terminate the employment of plaintiff by reason of his failure to sign a release of liability for injuries sustained in the course of his employment through the receiver's alleged negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 20, 21; Dec. Dig. § 21.*]

2. MASTER AND SERVANT (§ 21*)—CONTRACT OF EMPLOYMENT—ALTERATION.

Where, by an express contract between boilermakers and apprentices and a railroad's receiver, under which plaintiff was employed, the receiver was not entitled to discharge plaintiff except for cause, such contract was not subject to modification by an alleged custom of the receiver not to continue in his employment any employé having an unadjusted claim against him, and to require a release of all liability from the employé as a condition to a continuance of his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 20, 21; Dec. Dig. § 21.*]

3. RELEASE (§ 13*)—VALIDITY—CONSIDERATION.

Plaintiff, a boilermaker's apprentice, was employed under a contract for five years, providing against discharge except for cause. Plaintiff, while so employed, sustained an injury to his eye as the result of a piece of steel flying into it, due to his master's alleged negligence in failing to provide proper appliances, but was able to continue his work. On his return to work, he was required, as a condition to the continuance of his employment, to execute a release to the master for his injuries, reciting that it was based on a consideration of one day's employment at the usual pay and for such additional time only as might be satisfactory to the master, such time being wholly covered by his original contract of employment.

*Held*, that the consideration for the release was merely nominal, and insufficient to support it.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 21–27, 29; Dec. Dig. § 13.*]

Appeal from District Court, Anderson County.

Action by R. E. Morrow against T. J. Freeman, as receiver of the International & Great Northern Railroad. Judgment for plaintiff, and defendant appeals. Affirmed.

W. I. Sims and Morris & Fowler, all of Palestine, and Wilson, Dabney & King, of Houston, for appellant. A. G. Greenwood and Thos. B. Greenwood, both of Palestine, for appellee.

McMEANS, J. This suit was brought by the appellee, R. E. Morrow, against the appellant, T. J. Freeman, receiver of the International & Great Northern Railroad, to recover damages for personal injuries sustained by him while in the service of the receiver in the capacity of boilermaker's apprentice.

Plaintiff alleged that about March 15, 1909, he was injured by a piece of steel striking him in his right eye, and that the sight of that eye was destroyed; that this injury was caused by the failure of appellant to exercise ordinary care to furnish reasonably safe appliances to plaintiff and his coemployé, Weaver, with which to perform certain work as boilermakers; that the appliances furnished were defective, out of repair, and dangerous, and that a certain reamer had to be removed by the use of a chisel and hammer, whereas it was the duty of the company to furnish a shedder and drift with which to remove said reamer, which it did not furnish; that in using the hammer and chisel to remove the reamer small particles of steel would readily fly therefrom, and that one of these particles struck him in the eye, and caused his injuries, through the negligence of appellant. Plaintiff further avers that all of said defects and dangers were well known to the receiver, or could have been known by the exercise of ordinary care, and that such injuries were the direct and proximate result of appellant's negligence; that the defects and dangers aforesaid were unknown to plaintiff, or, if plaintiff knew of such defects, still the appellant was not relieved from liability for such injury, because, plaintiff alleged, that a person of ordinary care would have continued in the service of appellant with knowledge of the said defects and dangers. The defendant pleaded a full and complete settlement, setting out the release in full in its answer, reciting therein that, if plaintiff was injured as alleged, he was not entitled to recover because he and the receiver on the 13th day of March, 1909, made a full and complete settlement of the cause of action based upon a valuable consideration, and that the plaintiff then and there executed and delivered to defendant a release in full. The defendant also pleaded specially that said injury, if any, was caused by the negligence of the said Morrow, or by the negligence of his fellow servant, Weaver, or by the concurring negligence of himself and Weaver, and that he assumed the risk. The plaintiff filed a supplemental petition in which he alleged that, while he executed and delivered the release, there was no valuable consideration therefor, because at the very time thereof plaintiff was employed by the defendant for a term which included one day's employment, and that defendant had no legal or moral option to terminate said employment because plaintiff had received injuries through defendant's negligence, and pleaded, further, that such employment by defendant was by virtue of a written contract and agreement between the receiver and the boilermakers and apprentices, and alleged, further, that plaintiff was never out of the service of defendant, or ceased to be an employé, because of such contract between the receiver and the boilermakers and apprentices. The defendant in a supplemental answer pleaded specially that under the contract relied upon by plaintiff no one could be employed having an unadjusted claim against the company, because it was a rule of the railroad company and the receiver, fully understood and adopted by the plaintiff and all employés, and uniformly followed by the company and the receiver, to the effect that the receiver would not retain in his employment any one having an unadjusted claim, and that he would not promise employment or consider any one as an applicant for employment having such claim against the receiver; that this was true at the time plaintiff was injured; and that plaintiff fully recognized this rule, and made a settlement as set out in the original answer. The case was tried before the court without a jury, and resulted in a judgment for plaintiff for the sum of $5,000, from which the defendant has duly prosecuted this appeal.

Appellant's first assignment of error is as follows: "The court erred in its second conclusion of law in holding that the defendant was legally bound to continue to employ plaintiff as boilermaker apprentice at the usual rate of pay for a term which included the one day specified in the purported release in full, and in holding that there was no consideration whatever for said release in full, because the undisputed evidence shows that, under all the facts proved, defendant had the right under the aforesaid written contract existing between the boilermakers and apprentices and the defendant to discharge an employé who had received an injury upon his refusal to execute a release for said injuries, and the right of the defendant under the undisputed evidence to

refuse to permit plaintiff to continue in his employ unless he did execute a release for his aforesaid personal injuries, and the undisputed evidence further shows that said release was based upon a valuable and adequate consideration."

The first, second, third, and fourth propositions under this assignment are not germane to, but contradictory of, the assignment, and we are not at liberty therefore to consider them. The fifth proposition is as follows: "Where the undisputed evidence shows that by a rule in vogue for 20 years to the effect that appellant would not permit an employé, upon receiving an injury in the service, to resume work until such employé adjusted his claim for damages and executed a release in full of his said claim for said damages, and where the undisputed evidence shows that appellee executed a release for injuries sustained by him in consideration of 're-employment by said receiver of said company at the usual rate of pay for one day, and for such additional time only as may be satisfactory to said receiver of said company,' said release shows a re-employment for a definite period of time, and is a sufficient consideration to support the release."

The court upon proper request filed its written findings of fact and conclusions of law. From the fact findings we quote the following:

"(4) On or about the 13th day of March, 1909, the plaintiff signed and delivered to defendant the instrument in writing set out in full in defendant's original answer as a 'Release in Full.'

"(5) When the written instrument set out in defendant's original answer as a 'Release in Full' was signed and delivered by plaintiff to defendant, the plaintiff was in the employment of the defendant as a boilermaker's apprentice, under a written contract and agreement between defendant and the boilermakers and apprentices in his employ, including plaintiff, based upon mutual and valuable considerations, whereby it was stipulated that plaintiff should serve the defendant as a boilermaker's apprentice for certain specified compensation and for a definite term, which had not then expired, and would not expire until long after the 'one day' mentioned in said 'Release in Full,' and whereby it was expressly agreed that defendant's boilermaker's apprentices (including plaintiff) should in no case leave the defendant's service without just and sufficient cause, and whereby it was further expressly agreed that defendant's boilermaker's apprentices (including plaintiff) should not be discharged or suspended without just and sufficient cause, and whereby it was further stipulated that if, after proper investigation, it should be found that any boilermaker's apprentice had been discharged or suspended unjustly, then he should be reinstated, with full pay, for all time lost.

"(6) It was a custom of the defendant, when plaintiff signed and delivered said instrument termed 'Release in Full,' not to permit an employé having an unadjusted claim for damages against him to resume work until such employé signed and delivered what purported to be a release of his claim for damages, and plaintiff knew of this custom when he executed the instrument set out in defendant's original answer.

"(7) Notwithstanding the above custom, the fact that plaintiff had sustained an injury, through defendant's negligence, for which no release had been given, and which injury did not, at the time, interfere in the least with the proper performance by plaintiff of every duty of his employment by defendant, did not constitute just and sufficient cause for plaintiff's suspension or discharge.

"(8) The plaintiff was never suspended or discharged from defendant's service as a boilermaker's apprentice prior to the execution of the purported 'Release in Full,' and plaintiff has never received anything of value from the defendant, save in consideration of labor and services performed, at the price fixed for such services by written agreement between defendant and his boilermakers and apprentices, including plaintiff, and hence there was no consideration for the attempted release by plaintiff to defendant of the cause of action herein sued upon."

The second conclusion of law, which is attacked in the first assignment of error, is as follows: "Since the defendant was already legally bound to continue to employ plaintiff as a boilermaker's apprentice 'at the usual rate of pay' for a term which included the 'one day' specified in the purported 'Release in Full,' and since the defendant's promise of re-employment for any additional time was entirely optional with the defendant, there was no consideration whatever for the purported 'Release in Full,' and the same cannot bar plaintiff's recovery, and hence judgment will be entered in his favor for $5,000 and all costs."

The release pleaded by appellant and referred to in the court's fourth finding of fact and second conclusion of law is as follows:

"Release in Full.

"Whereas, on the 12th day of March, 1909, while employed in the service of Thomas J. Freeman, receiver of the International & Great Northern Railroad Company, at or near Palestine, I received personal injuries which were caused by 'piece of steel getting into my right eye,' for which such injuries and the damages resulting to me therefrom, I claim to have a demand against the said Thomas J. Freeman, receiver of the International & Great Northern Railroad Company; and whereas, said receiver of said company will not employ or retain in his employ any one who has any unadjusted claim for damages against him, and will not promise employment to or consider any one as an applicant

for employment who has an unadjusted claim against him: Now, therefore, in consideration of re-employment by said receiver of the said company at the usual rate of pay for one day and for such additional time only as may be satisfactory to said receiver of the said company, I do hereby acknowledge full settlement, payment and satisfaction of all claims and demands against said receiver of said company, and do hereby release and discharge said receiver of said company from any and all claims of whatever kind or character I may have on account of or arising from said injuries. To secure this settlement, I hereby represent to said receiver of said company that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries, disabilities and damages, and that no representations or statements about them, made by the surgeon or agents of said receiver of said company have influenced me in making, or induced me to make, this settlement. No promise or agreement not herein expressed has been made by said receiver of said company, nor by any of his officers, agents or employés. Dated at Palestine, this 13th day of March, 1909. R. E. Morrow."

The contract between appellant and the boilermakers and apprentices referred to in the court's fifth finding of fact, and which was in effect at the time plaintiff was injured, in so far as it is material to the question presented by the assignment and proposition under consideration, is as follows:

"International & Great Northern Railroad Company, Locomotive and Car Department.

"The following rules and regulations are issued for the government of the boilermakers and apprentices of the International & Great Northern Railroad Company, effective August 26, 1907:

\*   \*   \*   \*   \*   .\*

"Rule 2. No boilermaker or apprentice shall be discharged or suspended without just and sufficient cause. If, after proper investigation, it is found that a boilermaker or apprentice has been discharged or suspended unjustly, he shall be reinstated with full pay for all time lost; the investigation to take place in the presence of the shop committee within five days after such discharge or suspension. The shop committee shall first endeavor to adjust all grievances with the officials of the company at the point where such grievance exists. All grievances that cannot be adjusted locally shall be brought before the management for adjustment by the board of advisers appointed by the boilermakers."

"Rule 9. One apprentice shall be employed in each shop, irrespective of the number of boilermakers employed, and an additional apprentice may be employed for every five boilermakers. An apprentice hereafter engaging himself to learn the trade of a boilermaker shall serve five years. He shall be between the age of sixteen (16) and twenty-one (21) years when employed. He shall in no case leave the service of the company without just and sufficient cause, and shall receive ten cents per hour the first six months and semiannual increases prorated so that at the expiration of his five years' apprenticeship he shall equal the standard pay of a boilermaker covering the point at which the apprentice is employed. A service letter shall also be given him when he leaves the service, if on account of reduction of force, or if he has served the five years of his apprenticeship. This article to be construed to mean that apprentices employed previous to this agreement may be retained regardless of the number, if given the benefit of this schedule of wages."

It was shown without dispute that on January 1, 1910, the rules above referred to were changed so that the minimum rate of wages for all boilermakers on said railroad was fixed at 42 cents per hour, and provision was made for each prorated semiannual increases as would make the pay of an apprentice, at the expiration of four years' apprenticeship, equal the standard of a boilermaker. The cover of these rules and regulations, or contract, is as follows: "Agreement between the International & Great Northern Railroad Company, Thomas J. Freeman, Receiver, and Boilermakers and Apprentices, effective January 1, 1910"—and the same were signed at their conclusion by F. S. Anthony, superintendent of machinery, and H. M. Martin, superintendent, on behalf of the receiver, and by S. R. De Arment, H. W. Naylor, E. D. Woolridge, and J. Short, committee, on behalf of the boilermakers and apprentices, and approved by Thomas J. Freeman, receiver and general manager.

It was shown by the testimony of the plaintiff that the next morning after his injury he went back to work, and his attention was called by his foreman to the fact that before continuing in the service he would have to sign a release, and upon plaintiff telling the foreman he had not signed a release was told by the latter that he had better sign one, and that he then signed the release introduced in evidence, which is the same that is above copied. It was admitted that at the time plaintiff was injured, and for 15 or 20 years before this, and up to the time of the trial, it was a custom of the International & Great Northern Railroad Company, and of the receiver, not to permit an employé having an unadjusted claim for damages against the company or receiver to resume work until such employé signed and delivered what purported to be a release of his claim for damages, and that plaintiff knew of this custom at the time he was injured, and at the time he signed the release in question. After plaintiff signed the release, he resumed his work

and continued in the service until about September, 1909.

Appellant contends, in effect, that the signing of the "Release in Full" by appellee, for the recited consideration of his employment by appellant for one day "at the usual rate of pay, and for such additional time only as may be satisfactory to the receiver," was upon sufficient consideration, and that the release was binding upon appellee, and precluded his recovery. On the other hand, appellee contends that the question is not whether the agreement to employ appellee for one day at the usual rate of pay is a valuable consideration, but whether such an agreement is a valuable consideration when the appellant was already legally bound to employ appellee for that same one day—that the appellee having sustained an injury through appellant's negligence, which injury did not, at the time, interfere in the least with the proper performance of every duty of his employment, this did not and could not constitute just and sufficient cause for appellee's discharge or suspension under the written contract between the boilermakers and apprentices, which expressly forbade appellee's discharge or suspension on that account, hence appellant having already employed appellee for a period comprised in the term of his apprenticeship, was legally bound to employ him for such day, and that the pretended employment for one day furnished no consideration for the so-called release. It is urged by appellant, to meet this contention, that at the time plaintiff signed the release there was and for 15 or 20 years before then had been a custom of the railroad company and the receiver not to permit an employé having an unadjusted claim for damages against the company or receiver to resume work until such employé had signed a written relinquishment of such claim; that, this custom being in vogue at the time of the execution of the agreement between the receiver and the boilermakers and apprentices, it must be read into the agreement, and as thus read into it the failure of an employé to release a claim for damages was understood and agreed to constitute just and sufficient cause for his discharge; and that, therefore, the consideration of the employment of appellee for one day at the usual rate of pay was a sufficient consideration for the execution of the release.

[1] We must overrule the contention of appellant in this regard and sustain that of appellee. The agreement does not provide what should constitute a just and sufficient cause for an employé's discharge. Independently of the custom relied upon by appellant above referred to, his contention, when reduced to its last analysis, is that the negligent act of the receiver proximately resulting in a personal injury to an employé is "just and sufficient cause" for the employé's suspension or discharge, unless the employé release his claim for the damages sustained by him upon such terms and for such consideration as the employer may voluntarily choose to offer. We cannot subscribe to such a doctrine. Railway v. Greenwood, 2 Tex. Civ. App. 76, 21 S. W. 561; Mudgett v. Texas Tobacco, etc., Co., 61 S. W. 151; Clay, etc., Tel. Co. v. Root, 1 Sad. (Pa.) 485, 4 Atl. 828; 26 Cyc. 989.

[2] Nor can we agree with appellant's contention that the custom referred to should be read into the agreement between the receiver and the class of employés named. Rather it should be said that this class of employés knowing of the custom of the employer to discharge or refuse to continue in his service employés who might have a claim for damages for personal injuries arising from the negligence of the employer, unless the employé should relinquish such claim, desired to interrupt this custom in so far as it applied to the employés in that department of the service, and to that end procured the agreement that no one of their number should be discharged without just and sufficient cause. The appellee proved an express contract which needs no extrinsic aid for its interpretation, and which forbade appellee's suspension or discharge except for just and sufficient cause, and which, in our opinion, forbade his suspension or discharge for refusing to release his claim for damages caused by the master's delinquency. In such case it seems to be well settled that the contract must prevail over a contrary custom. Orient Mutual Ins. Co. v. Wright, 1 Wall. 456, 17 L. Ed. 505; Baltimore Baseball Club v. Pickett, 78 Md. 375, 28 Atl. 279, 22 L. R. A. 690, 44 Am. St. Rep. 304; Camp v. Baldwin-Melville Co., 123 La. 257, 48 South. 927; Stovall v. Gardner, 103 S. W. 406; 12 Cyc. 1094, 1095, and note 82.

Here we have an express contract safeguarding the servant's employment for five years against discharge for any cause that is not just or sufficient. By means of custom an additional cause is sought to be introduced, to wit, the servant's refusal to surrender to the master a cause of action arising out of the master's tort, on terms of the master's dictation; and this additional cause of discharge is both inconsistent with and contrary to the express contract in that it is manifestly unjust and insufficient. The law which governs on this point is so well expressed by Justice Miller of the United States Supreme Court, in the case of Orient Mutual Ins. Co. v. Wright, supra, we cannot forbear taking the following excerpt therefrom: "When we have satisfied ourselves that the policy is susceptible to a reasonable construction on its face, without the necessity of resorting to extrinsic aid, we have at the same time established that usage or custom cannot be resorted to for that purpose. In speaking of usage of trade, Greenleaf says (Ev. vol. 2, § 251): 'Their true office is to in-

terpret the otherwise indeterminate intentions of parties, and to ascertain the nature of their contracts arising not from express stipulation, but from mere implications and presumptions, and acts of doubtful and equivocal character, and to fix and explain the meaning of words and expressions of doubtful and various senses.' Again he says (1 Greenleaf, Ev. § 292): 'But, though usage may be admissible to explain what is doubtful, it is not admissible to contradict what is plain.' In the case of The Reeside, 2 Sumn. 567, Mr. Justice Story, after using language strongly condemning the tendency to introduce and rely on usages in courts of justice, and defining their true office in the language just cited from Greenleaf, proceeds to say: 'But I apprehend that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and a fortiori, not in order to contradict them. An express contract of the parties is always admissible to supersede or vary or control a usage or custom; for the latter may always be waived at the will of the parties. But a written and express contract cannot be controlled or contradicted by a usage or custom, for that would not only be to admit parol evidence to control, vary, or contradict written contracts, but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties.' These views, in addition to the high source whence they come, commend themselves to our judgment by their intrinsic soundness. 'Not only is a custom inadmissible, which the parties have expressly excluded, but it is equally so if the parties have excluded it by necessary implication. For a custom can no more be set up against the clear intention of the parties than against their express agreement, and no usage can be incorporated into a contract, which is inconsistent with the terms of the contract. 2 Pars. Con. 59; Bliven v. N. E. Screw Co., 23 How. (64 U. S.) 431, 16 L. Ed. 513; Atkins v. Howe, 18 Pick. (Mass.) 16; Bogert v. Cauman, Anth. N. P. (N. Y.) 70; Allegro v. Md. Ins., 2 Gill & J. (Md.) 136, 20 Am. Dec. 424. Tested by these principles, the usage attempted to be set up in the case at bar cannot be sustained. It contradicts, directly, the written contract. It proposes to set aside all that is said about the rate of premium, and substitute the discretion of one of the parties to the instrument. It goes upon the assumption that all that is written in the contract, which fixes, or ascertains, or limits the amount that may be claimed for premium of insurance by the company is nugatory, and that the whole field is left open, and the power placed in the hands of one of the parties exclusively. No such usage can be admitted thus to contradict, vary

156 S.W.—19

or control this contract." If custom then be allowed to prevail over the agreement or to aid in its construction, then we would have the following anomalous condition: The express agreement requires that all boilermaker's apprentices employed subsequent to its date must be hired for five years, and those previously employed must be retained for five years, and that they should not be discharged without just and sufficient cause, while, on the other hand, custom makes an exception of an apprentice who refuses to surrender his claim for damages against the master, although the claim arises on the master's tort; for under this custom his subsequent continuance in the service is not for a certain term, and not until some just and sufficient cause for his discharge arises, but becomes terminable at once upon his refusal to sign a release, or, if he sign one, becomes then by the terms of the release itself terminable at the will of the master after one day's service. Other inconsistencies and contradictions between the agreement and custom could be pointed out, but we think that already suggested is sufficient to show that to permit the custom to control the contract would be to defeat the contract itself, and to nullify the evident object and intention of the parties in making it.

[3] Under the agreement referred to the appellant had obligated itself to retain appellee in his service until the latter had completed his apprenticeship unless for some good and sufficient cause the appellant should sooner terminate his employment; and appellee by the terms of the agreement obligated himself to remain in the service for such length of time, unless for good and sufficient cause he should determine to quit. This being the reciprocal obligations of the parties, the refusal of appellee to sign the release would not have been a good and sufficient cause for his discharge, nor did it in any way affect his right, under the agreement, to continue in the service of appellant, and therefore the release of appellant's liability to him, based upon a consideration of one day's employment at the usual pay, was without a valuable consideration, and voidable.

But, independently of all the foregoing considerations, we think that the purported "Release in Full," relied upon by appellant to defeat a recovery by appellee, was not supported by a valuable consideration, and could therefore be avoided by appellee. The recited consideration was his re-employment by the receiver at the usual rate of pay for one day, and for such additional time only as may be satisfactory to the receiver. Releases based upon similar considerations have been reviewed by our appellate courts. In Quebe v. Railway, 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545, the consideration for the release was $1, and employment for one day, and for such further time and

in such capacity as might be satisfactory to the railway company, and it was there held that the consideration was a valuable and legal one, though small. It was shown that the dollar mentioned as a part of the consideration was in fact paid. But in Railway v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644, the recited consideration for a release was the "re-employment by said company for such time only as may be satisfactory to said company." The district court had instructed the jury peremptorily that the release was without consideration, and in passing upon a question raised by the giving of this charge, our Supreme Court held, first, that "when the release was executed there was no promise on the part of defendant to re-employ plaintiff at all, nor any other consideration to support plaintiff's promise, and hence no contract binding on either party arose"; and, second, that since defendant upon employing plaintiff could, under the right expressly reserved, have discharged him at once, without violating any agreement, the actual employment and payment of wages for some time thereafter did not supply the consideration which was originally lacking."

We have not found, nor has our attention been called to, any case where the consideration for a release of a claim for damages is the same as that in the release under consideration. We think, however, that that in the Smith Case is more nearly like this than in the general run of cases where the consideration, or rather the want of it, is called in question. The Supreme Court refused to extend the principle of the Quebe Case to sustain Smith's release, and we cannot extend it to sustain the release at bar. In view of the evidence it cannot be logically asserted, we think, that the plaintiff, Morrow, had been really discharged or suspended, and it follows from this that there was no real reemployment. The promise to pay the usual rate of wages for one day cannot support more than the promise to perform work for one day equal in value to that day's wages, and any additional benefit promised in return for such one day's employment for the usual wages of one day must be held to be a pure gratuity. We think the consideration stated in the release, if not fictitious, was nominal merely, and not sufficient to support a contract for the surrender of plaintiff's cause of action for his injuries growing out of appellant's negligence. The assignment is overruled.

What we have said in disposing of the first assignment disposes also of the second, sixth, seventh, and eighth adversely to appellant's contention.

The third assignment complains of the court's finding of fact to the effect that plaintiff at the time of his injury exercised such care for his own safety as an ordinarily

prudent person would have exercised in the same circumstances. In disposing of this assignment we think it is sufficient to say that we have carefully examined the evidence and are of the opinion that the evidence warranted such a finding. The assignment is overruled.

We are also of the opinion that the evidence in the record warranted the court in finding as a fact that the appellant's negligence in furnishing plaintiff and his coemployé, Weaver, an unsafe and defective Little Giant motor, without reasonably safe appliances for the removal of a reamer therefrom, was the proximate cause of plaintiff's injury, and appellant's fourth and fifth assignments attacking this finding are overruled.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.