## FAIRBANKS, MORSE & CO. v. CARSEY.

### No. 12258.

Court of Civil Appeals of Texas. Dallas.
Sept. 25, 1937.

Rehearing Denied Nov. 13, 1937.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Clark, Harrell & Clark, of Greenville, and Hamilton, Hamilton & Turner, of Dallas, for appellee.

LOONEY, Justice.

Fairbanks, Morse & Co., a nonresident corporation having a branch office in the city of Dallas under the management of E. E. Pendray, employed Robert Carsey as salesman of Diesel engines and equipment, for one year beginning January 9, 1933, at a salary of $3,600 per year payable $300 per month, and 5 per cent. commission on the net amount of . all sales made for the territory allotted, in excess of eleven times the amount of his salary and traveling expenses, commission to be credited at the end of the contract year. Carsey, it seems, rendered efficient and satisfactory service, but on October 4, 1934, was discharged by the new manager recently put in charge of the Dallas office.

After the expiration of the period of his contract, Carsey brought this suit, alleging breach of the contract by appellant and seeking recovery of balance of salary due and the commissions earned. The issues framed by pleading and supported by evidence are sufficiently indicated by the issues submitted to the jury. The answers of the jury resolving these issues, substantially, are as follows: They found that, on January 9, 1933, appellant, acting by and through its agent, E. E. Pendray, by a verbal contract employed appellee for one year, as salesman of Diesel engines and equipment, at a salary of $3,600, payable in installments of $300 per month, and a commission of 5 per cent. on the net amount of sales made in the territory allotted to him, that is, after deducting eleven times the amount of his salary and traveling expenses; that on January 9, 1934, the contract of employment was renewed on the same terms and conditions and extended for another year; that the discharge of appellee by appellant (on October 4, 1934) was without good cause; that, after being discharged, appellee was diligent in efforts to find other employment and earned, as the result of his efforts prior to January 9, 1935, the sum of $100.

The right of appellee to a commission on the sale made to Inland Engineering Company, for shipment to and installation in the town of Bartlett, was contested by appellant on the ground that Bartlett was not in the territory assigned to appellee. In answer to issues submitted in regard to this phase of the case, the jury found that the city of Bartlett was a part of the sales territory assigned to appellee, and, further, that under the agreement appellee was entitled to commissions on sales made in his sales territory for shipment to points outside his territory, and that the sale of the engines and equipment in question, for use by the city of Bartlett, was made in Carsey's sales territory at Dallas, Tex.

Based upon the pleadings, the evidence, and findings of the jury, the trial court concluded that appellee was entitled to credit for the net amount of his sales, to wit, $74,043; that eleven times the amount of his salary and traveling expenses to October 4, 1934 (date of his discharge), was $48,840.66; that the difference between these two amounts was $25,202.34, upon which appellee was entitled to a commission of 5 per cent., to wit, $1,260.10, to be credited as of date of his discharge. There being no controversy as to how the commission should be due and payable, the court found that the sum of $826.62 was due and payable on January 9, 1935, the end of the contract year; that $216.74 would mature and become payable January 9, 1936; and that $216.74 would become due and payable January 9, 1937; and, it further appearing to the court that appellee was entitled to recover the dif-

ference between the amount of his unpaid salary, to wit, $830, and the amount the jury found he had earned from October 4, 1934, to January 9, 1935, to wit, the sum of $100, the difference being $730, which amount the court included in the judgment, providing, however, that, no execution should issue for the collection of $216.74 until January 9, 1936, and that no execution should issue for the collection of the $216.74 prior to January 9, 1937. After its motion for a new trial was overruled, appellant excepted, perfected appeal, and urges as grounds for reversal the questions hereinafter discussed.

Grouping its first and eighth propositions, appellant contends that no recovery could be had under the alleged contract, in that the consummation of same by E. E. Pendray, manager of appellant's Dallas branch office, was not shown to have been within the scope either of his express, implied, or apparent authority, and, in this connection, that the court erred in submitting issue No. 1, requiring the jury to answer whether or not, on behalf of appellant, Pendray had entered into the alleged verbal contract.

It is our opinion that Pendray, appellant's manager in charge of its branch office in the city of Dallas, including in its jurisdiction the state of Texas, was, as a matter of law, clothed with authority commensurate with the business intrusted to him, therefore was authorized to exercise all powers necessary to properly conduct appellant's business, hence, unless his authority was effectually limited in regard to the making of the contract under consideration, his action in consummating same is binding on appellant. 2 Tex.Jur. Agency, §§ 37-40.

Neither by pleadings nor proof did appellant challenge the authority of Pendray, and, as no controversy on this matter was presented, the court did not submit the issue, nor did appellant object to the court's charge for failure to submit same, or request its submission, seemingly, the matter was treated as uncontroverted. The only basis for the contention now made that Pendray was without authority to make the contract is a letter (copied later) by A. C. Dodge, appellant's vice-president and sales manager, dated January 6, 1933, addressed to Pendray, dictated in the presence of appellee at the home office of appellant at Chicago. The record discloses that, prior to the visit of the Carseys to ap-

pellant's home office (at the time the letter in question was dictated), Pendray had sought the re-employment of the Carseys (both having formerly been in the service of appellant), and, on December 23, 1932, being at the home office of appellant in Chicago, wrote appellee on appellant's stationery, stating that he (Pendray) was authorized to go ahead with appellee and his father in accordance with the conversation theretofore had with them in Greenville. In this letter, Pendray outlined the plan and purpose of appellant to rehabilitate its sales in Texas through the efforts of appellee and his father. In their later negotiations, however, it developed that they could not reach an agreement in regard to the maturities of commissions; Pendray insisting that he could not or would not change the plan of paying commissions as provided in the standard contract, in that such provision was the idea of Mr. Morse, president of appellant. So, appellee and his father went to Chicago for the purpose of securing a change of the plan of paying commissions (but in this they failed), and while there the letter in question was dictated by Mr. Dodge, addressed to Pendray, as follows: January 6, 1933. E. E. Pendray, Ass't Mgr., Care Dallas Branch. Subject—John M. Carsey and Robert Carsey. Dear Mr. Pendray: Both of the Carseys called on us today and discussed the situation in Texas with Mr. Dierks, Mr. Brooks, Colonel Morse and myself in considerable details. Both of the Carseys having taken the position that they could not, or would not, sign the Standard Salesmen's Contract Form, it was finally agreed in the office of Colonel Morse that Mr. Robert Carsey would go to work at Dallas, without a written contract, but with a verbal understanding with you substantially in accordance with the terms of the Standard Contract Form. The details in respect to just how the Carseys are to work will be a subject which you will have to discuss with them upon their return to Dallas. You should also have a very definite idea with respect to the verbal arrangement you may make with them and with respect to the drawing accounts, commissions, expenses, etc. Please forward to me a report of your further conversation with Mr. John Carsey and Mr. Robert Carsey. Very truly yours, F. M. & Co., (signed) A. C. Dodge, Sales Manager."

This letter reveals that appellant's corporate officers discussed with the Carseys the

situation of the company's business in Texas; that for reasons evidently discussed and well understood the Carseys refused to sign the standard salesmen's contract, therefore it was understood that appellee would go to work at Dallas under a verbal understanding to be had with Pendray; Pendray being admonished to have a definite idea in respect to the drawing accounts, commissions, expenses, etc. In the concluding paragraph Pendray was requested to report further conversations had with the Carseys in regard to the contract. Three days later, on January 9, 1933, the verbal contract between appellee and Pendray was consummated.

We think it reasonable to conclude that, as requested, Pendray reported to Mr. Dodge, sales manager, the precise verbal understanding had with appellee, under which, seemingly, for a year and nearly nine months, he served appellant faithfully and efficiently. In this situation, we think it should be presumed, in support of the verdict and judgment, that appellant acquiesced in the verbal understanding between appellee and Pendray as being substantially in accord with the terms of appellant's standard contract form; the chief differences being that (1) under the verbal contract appellee was to be credited with all sales made in his territory, while the form contract contains limitations and restrictions that would have denied him full credit, unless in person and exclusively he had completed and closed the sale; (2) the form contract gave the manager of the Dallas branch the right, arbitrarily, to say finally and conclusively what sales should be credited to appellee upon which to compute his commissions; while the facts, under the terms of the verbal contract, controlled; (3) under the standard form, the contract could have been terminated arbitrarily upon thirty days' notice, while appellee's contract was for the definite period of one year, hence, as a matter of law, could not be terminated except for cause deemed good.

Another matter in regard to which the parties differed as to the contract, is this: Appellee contends that, under the agreement with Pendray, in order to ascertain the amount upon which to calculate the 5 per cent. commissions, there should be deducted from his total sales an amount equal to eleven times his salary and expenses; while appellant contends that the deduction should have been thirteen times the amount of his salary and expenses. The standard form is blank in this respect; it contains no particular multiplier to be used; however, there was testimony to the effect that private instructions required that the multiplier to be used in a particular instance should be graduated according to the amount of salary paid; that is, a higher salary required a higher multiplier, but it was not shown that this instruction was in existence at the inception of the contract, but, even if so, it was not shown that appellee knew of the existence of such instruction. Aside, however, from this, the letter of January 6th, heretofore set out, authorized Pendray to verbally agree with appellee with respect to the drawing account, commissions, expenses, etc., and, having agreed, as contended by appellee, we think the agreement binding on appellant.

In its propositions second and tenth, appellant contends that, as a matter of law, the discharge of appellee was justified. In answer to a proper issue, the jury found, and we believe correctly, that the discharge was without good cause. The facts bearing upon this phase of the case are these: Pendray having left the service of appellant a short time before the discharge of appellee, a new manager, a Mr. Morse, took charge of the Dallas branch, and soon thereafter called appellee into his office and questioned him as to the kind of contract he held. Appellee answered that his contract was verbal, stating its terms. Morse indicated that he did not believe appellee, saying that, if he (appellee) continued in the service of appellant, a written contract would have to be executed. For a year and nearly nine months appellee had served appellant as salesman—to its entire satisfaction, in so far as disclosed by the record—under a parol agreement, the terms of which presumably appellant knew, or at least should have known. At that juncture and in the situation presented, we do not think the new manager had the legal right to demand that appellee sign a written contract, but appellee told Morse that he had no objection to signing a written contract, provided it reproduced the verbal contract, and suggested that Morse write it out. Morse dictated a letter (to whom is not disclosed) embodying the features of appellee's contract as detailed by him, stating, however, in the face of the letter that, while he (Morse) would accept the contract as described by appellee, he did not believe appellee had such a contract. Thus, appel-

lee was presented a writing for his signature, containing in its body an impeachment of his own integrity. He refused to sign and was discharged. His discharge, under these circumstances, in our opinion, was wrongful and wholly without legal justification. Freeman v. Morrow (Tex.Civ.App.) 156 S.W. 284. The definition of "good cause" in the court's charge was correct, and the issue otherwise was properly submitted. 29 Tex.Jur. p. 29, § 14.

Appellant groups its third and fourth propositions. In the third appellant insists that, in regard to the maturity of the commissions sued for, there is a fatal variance between the allegations and proof; and in the fourth it is insisted that the court erred in awarding judgment in favor of appellee for items of commissions that did not mature until after the rendition of judgment.

We fail to find the existence of a fatal variance. Appellee alleged that it was agreed that credit for all his commissions, if any, was to be given at the end of his contract year, but made no allegations as to the date or dates commissions would mature and become payable. Appellant did not urge a plea in abatement upon the ground that the cause of action for the recovery of commissions was premature; nor did it except to appellee's petition because the maturity dates of the commissions were not alleged, its contention being that it did not owe appellee any commissions. The evidence showed that the commissions earned by appellee were to be credited at the end of his contract year; that on sales in which the purchaser had contracted to pay in one year or less from the date of sale, commissions were due at the end of the contract year; on all sales where the purchase price was to be paid in more than one and less than two years, 50 per cent. was due at the end of the contract year, and 50 per cent. one year thereafter; and, where the purchase price was to be paid in two or more years, 50 per cent. of the commissions was due at the end of the contract year, 25 per cent. one year thereafter, and 25 per cent. two years thereafter. The end of appellee's contract year was January 9, 1935, and, as the contract price on some of the sales were payable over a period of more than two years, appellee was entitled to collect 25 per cent. of the commissions on such sales January 9, 1936, and 25 per cent. January 9, 1937; these respective amounts were shown by the evidence to be

$216.74. As to these items, the judgment of court made no provision for the collection of interest and directed that execution should not issue for collection prior to the respective dates of their maturity. Although appellee's cause of action was single, he sought recovery of two elements of damage, that is to say, the balance due as salary for the unexpired portion of the year, and the amount of commissions due on sales consummated prior to his discharge. The doctrine against splitting causes of action is announced in 1 Tex.Jur. (subject, Actions) pp. 672, 673, § 55, as follows: "The rule forbidding the splitting of causes of action is applicable to causes arising ex contractu. Accordingly, a party complaining of the breach of a single contract may not divide his damages and bring separate actions for different items thereof. There can be but one recovery for the breach of a single contract, particularly where the breach is of such nature as to put an end to the entire contract. And it has been decided that when two parties are jointly interested in one breach two suits are not maintainable". The instant case is not unlike Davis v. McGaughey (Tex.Civ.App.) 32 S.W. 447, 448, where judgment was rendered for an entire indebtedness evidenced by notes; the court said: "We are of opinion that in cases of this kind where a balance of the note not due remains unsatisfied after the common security has been applied and exhausted, there should be a stay of execution as to the uncollected balance of the note not due till after its maturity; but, as no steps were taken in the court below to correct the form of the judgment, and it was superseded till the whole debt is now past due, rendering such correction useless, it will be affirmed without reforming it and taxing costs against defendant in error."

That the court had the right to stay execution and abate the interest on the amounts not due cannot be seriously questioned. "Under the general supervisory powers over their process, all courts of common law have the power temporarily to stay execution on judgments by them rendered whenever it is necessary to accomplish the ends of justice." 23 C.J. p. 521. In the instant case, we think it was necessary, for the accomplishment of the end of justice, that the court establish the amounts and render judgment for the commissions not yet matured, and stay execution until their maturities, this to avoid a multiplicity of

suits. However, appellants contend that these commissions may never .become due and payable. In support of this contention, reference is made to the testimony of appellee, who stated in effect that, if at the time the 25 per cent. portions of his commissions became due, foreclosure proceedings had been begun against purchasers of the engines and equipment sold, that his commissions would be held back; but there is nothing in the record to warrant the conclusion that the commissions would never be paid. As heretofore shown, appellee and his father went to Chicago for the purpose of securing a modification of the standard form contract, in regard to the maturities and payment of commissions earned, but, failing in their mission, the form contract provisions were left controlling; these are as follows: "Sales will be credited under date of shipment or the completion of erection, if goods require erection, less freights, commissions and erection expense, credit allowed to represent the net price obtained for the goods F. O. B. factory. The percentage of the sale credited under date of shipment or completion of erection, will be 100. However, for the purpose of computing the commission payments, if terms of more than one year and not to exceed two years are granted, the payment at the expiration of this agreement will be 50% of the commission earned on such sales credits, and the remaining 50% will be paid one year from the expiration of this agreement. If terms of more than two years are granted, payment at the expiration of this agreement will be 50% of the commissions earned on such sales credits, 25% will be paid one year from the expiration of this agreement and the remaining 25% will be paid two years from the expiration of this agreement." Thus, it appears that, on being consummated, appellee was to be credited with all sales and allowed commissions thereon, payable as just indicated; and, while the contract provides for deduction for goods returned and allowances made in settlement of accounts, appellant neither alleged nor proved that it was entitled to deductions under said provisions.

The gist of the question presented in propositions fifth, sixth, eleventh, and twelfth is that the town of Bartlett was not a part of appellee's sales territory, hence he was not entitled to a commission on the sale made at Dallas to Inland Engineering Company, shipped to and installed in the town of Bartlett. The question raised was one of fact and based upon ample evidence; the jury found that the town of Bartlett was in appellee's sales territory; furthermore, the sale having been consummated in the city of Dallas (admittedly within appellee's sales territory), for shipment to and installation in the town of Bartlett, under the terms of the established contract, appellee was entitled to credit for the commission, even though it should be found that the town of Bartlett was not within his sales territory.

In its seventh proposition, appellant contends that, under the method of computing appellee's damages, a double recovery was permitted. This contention is based upon the idea that the amount ($830) of appellee's salary remaining unpaid at the time of his discharge should have been added to the amount of salary and traveling expenses paid prior to his discharge, as the proper multiplicand to be multiplied by eleven to produce the proper subtrahend deductible from the gross sales, in order to arrive at the amount upon which the 5 per cent. commission should be calculated.

Appellee's cause of action was based on the alleged wrongful discharge. He was permitted to recover, as damages, balance of the salary to the end of his contract year, less the amount earned otherwise, and commissions on sales consummated prior to the discharge. We do not think the method of computing the damages adopted by the court permitted a double recovery, and that, from appellant's standpoint, the method adopted was unobjectionable.

In its ninth proposition, appellant assails as duplicitous special issue No. 7, relating to the renewal of the contract. We do not think the issue duplicitous, in fact, the evidence was uncontradicted, to the effect that the first year's contract was renewed and extended, hence the issues did not require the jury to settle a disputed matter.

In its thirteenth proposition, appellant complains of special issue No. 18 as being duplicitous and multifarious, wherein the court requested the jury to find the total amount of freight, commissions (paid in consummating sales), and erection expenses paid by defendant on sales. We do not think the issue is sub-

ject to the criticism. It simply presented to the jury the task of adding up the total of the freight, commissions, and erection expenses paid on all of these jobs, in regard to which the evidence in detail was before the jury.

 Appellant's proposition No. 14 complains of the action of the court. in permitting appellee to calculate (from data in evidence) the amount to which he was entitled, according to his contention. We find nothing in the proposition of which appellant can justly complain. The testimony complained of is nothing more than a summary and tabulation, based upon facts and figures before the jury. That such testimony is admissible see Missouri, K. & T. Ry. Co. v. Patterson (Tex.Civ. App.) 164 S.W. 442; Cochran v. Hamblen (Tex.Civ.App.) 215 S.W. 374.

We have carefully considered all propositions and assignments urged for reversal, but, finding no reversible error, they are overruled, and the judgment of the trial court is affirmed.

Affirmed.