**Wally HOFFRICHTER, Appellant,**

v.

**BROOKHAVEN COUNTRY CLUB CORPO-RATION et al., Appellees.**

**No. 17320.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 7, 1969.

Rehearing Denied Dec. 12, 1969.

John D. Crawford, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

M. Clifton Maxwell, Dallas, for appellees.

BATEMAN, Justice.

The appellant Wally Hoffrichter sued Brookhaven Country Club and two other corporations alleged to be its alter ego, for damages for breach of an alleged employment contract. When appellant rested his case, and before any evidence was offered on behalf of appellees, the court sustained appellees' motion for a directed verdict and rendered judgment that appellant take nothing.

■ In determining the question of whether there was sufficient evidence to raise issues of fact upon which the jury could have rendered a verdict in appellant's favor we must view the evidence in the light most favorable to appellant and must indulge against the instruction and the judgment every reasonable inference that may properly be drawn from the evidence.

Hughes v. J. Weingarten, Inc., 398 S.W.2d 440 (Tex.Civ.App., Beaumont 1965, writ ref'd n. r. e). This is true even though the evidence may be legally insufficient to support a verdict in favor of appellant. Stuckey v. Union Mortgage & Investment Co., 383 S.W.2d 429 (Tex.Civ.App., Tyler 1964, writ ref'd n. r. e.). After thus viewing the evidence, if we find that there was any proof, direct or circumstantial, which could properly give rise to a legal inference of the essential elements of appellant's case, the judgment must be reversed. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 562 (1952); White v. White, 141 Tex. 328, 172 S.W.2d 295, 296 (1943).

■ It is generally held that an employment contract for a definite period may not be terminated by the employer during that period "except for cause deemed good." Fairbanks, Morse & Co. v. Carsey, 109 S.W.2d 985, 989 (Tex.Civ.App., Dallas 1937, writ dism'd); Porter v. United Motels, Inc., 315 S.W.2d 340, 344 (Tex.Civ. App., Waco 1958, no writ).

Appellant alleged an oral contract by which he was employed by the Country Club's general manager, Vic Rimes, to be the director of the Club's swimming pool activities for the period from June 1, 1966 to Labor Day, 1966. Appellant claims that under this contract he would have been entitled to receive all of the fees for swimming lessons given by him, in consideration of which he agreed to manage and be responsible generally for the operation of the Club's swimming pools during that period. He alleged, and the evidence showed without dispute, that he had been so employed each year since the opening of the Club in 1958 to and including the year 1965. Appellant claimed that he was employed in each of those years for the definite period from June 1 through Labor Day, and offered in proof of the definiteness of the period of employment a written memorandum from General Manager Rimes dated

June 1, 1965, the first sentence of which was:

"The following is an outline of your responsibilities as Pool Manager for Brookhaven Country Club from June 1, 1965 thru Labor Day,"

followed by two pages of detailed instructions relating to cleanliness of the pool area, safety, et cetera. The evidence contains no such writing pertaining to the year 1966.

We have carefully reviewed the evidence and have concluded that there was at least some evidence to raise an issue for the jury as to whether there was in fact a contract of employment for a definite term in 1966.

Appellant testified that although he had held the position every year since 1958 it was nevertheless under a new contract each year. He said that on or about April 13, 1966 he went out to the Club to talk to Rimes about employment for the summer, it being customary for swimming pool directors to make such arrangements in the spring of each year; also that it was customary for such directors, when employed, to begin scheduling classes for swimming instructions throughout the summer. He testified that (as nearly as he could recall the exact words), Rimes told him, "I guess we will go along with you again, Wally," and that he introduced appellant to another employee stating that appellant "is our swimming director, and you will be working with him." On cross-examination he said that it was his "understanding" as a result of that conversation that he would be coming back for that summer, and when asked whether he had said to Rimes, "I will be back," and whether Rimes replied, "That is good," he answered "Yes." He said also that Rimes discussed with him at that time certain things that needed to be done in the restroom areas. He then said, when asked whether Rimes had offered him the job and whether he had accepted it, that when they shook hands he knew

that he "was going to be hired for the (1966) summer"; that they had the right not to rehire him, but that since he had gone out there and had the conversation he "assumed" he was going to be hired.

Rimes testified that since he came to Brookhaven as manager in June 1963 he and the board of directors had had repeated complaints about the unsightly and dirty condition of the pools and the demeanor of the lifeguards toward the members and their guests, and that he had been looking for a replacement for appellant since 1964; that he did not hire appellant for the summer of 1966 although he discussed the matter with him in April of that year; that he did not at that time tell appellant that he would not be there that summer, for the reason that he did not have a replacement for him yet, but that as soon as he got the new man he told appellant that he had decided to replace him.

Appellant also testified that on or about April 28, 1966 Rimes told him that he had employed a new swimming pool director; that Rimes did not tell him that he had done anything wrong or that he had not performed any duties; that actually he had not started the duties for which he thought he was hired.

The case presents two ultimate fact questions: whether there was a meeting of the minds of both parties (1) on the employment of appellant, and, if so, (2) whether for a definite period of time. These questions are to be determined, not alone by the words actually used by appellant and Rimes in the conversation of April 13, 1966, but also by such inferences as may reasonably be drawn from the evidence and the existing circumstances.

Some of the circumstances surrounding the parties were that appellant had held the job in question for eight consecutive summers; that appellant was a schoolteacher nine months of each year and a swimming pool director during the other three months; that he had never received a salary for the swimming pool work at

Brookhaven but had been given the right to use the Club's swimming pool facilities in giving swimming lessons, keeping for himself all of the fees therefor, in consideration of which privilege he managed the Club facilities, hired and supervised the lifeguards and was responsible for keeping the swimming pool area in a safe and tidy condition; that in order to reap the maximum benefit from the privilege it was necessary for the director to know a month or two ahead of the beginning of the season that he would be so employed in order that he might put the facilities in order and schedule his swimming classes for the entire summer; and that all of these facts were known to Rimes when they met at the Club on April 13, 1966 to discuss the question of whether appellant would be employed. In that conversation, according to appellant, Rimes said to him, "I guess we will go along with you again, Wally," or something to that effect. Rimes could not recall making such a statement, but he admitted in his testimony that he desired to leave open the matter of renewing appellant's contract until he was certain he could employ someone else in the position who would probably be more satisfactory to him and the board of directors.

We are of the opinion that these facts and circumstances, together with the inferences to be drawn therefrom, would require the submission to the jury of the issues as to whether Rimes had in fact agreed upon the employment of appellant, and as to whether the parties mutually intended that such employment should be for the entire season unless terminated for cause. The jury might well believe appellant when he testified, in response to a question by appellees' counsel, that he told Rimes, "I will be back" and that Rimes replied, "That is good." The jury may also have believed that Rimes did say to appellant, "I guess we will go along with you again," and that he meant thereby what appellant understood him to mean, that is, that the Club was employing appellant for the 1966 summer season on the same terms as before.

The admissibility and significance of the written memorandum of June 1, 1965 is shown by the following excerpt from McCormick and Ray, Texas Law of Evidence, Vol. 2, § 1523, p. 369:

"Other instances of the making of similar contracts may indicate a general plan or scheme of making such contracts which are likely carried out in the instance in question."

Our views with respect to the term of employment are also well expressed in Farmers' Union Co-Op. Clearance House of Rusk v. Guinn, 208 S.W. 362, 363 (Tex. Civ.App., Texarkana 1919, no writ):

"It is true that it was not expressly stipulated that the appellee should remain in the service one year, or for any definite length of time; but the evidence shows that it was the custom of the corporation to employ a manager annually, and to require of him a bond conditioned for the faithful performance of his duty. The jury had a right to conclude that, with a full knowledge of this custom, the parties had it in mind and contracted with reference to that term of service."

Western Union Telegraph Co. v. Eckhardt, 20 S.W.2d 759 (Tex.Com.App.1929, on rehearing), was a suit for damages on account of delay in delivery of a telegram regarding employment of a baseball player. The telegram mentioned a monthly salary, and the defendant contended that in any event the offering employer was not bound beyond the period of one month, and therefore the damages were limited to one month's salary. However the court said on rehearing:

"Where no time is provided in an employment, the length of time the hiring is to continue will be governed by the circumstances of each particular case. * * * It is a matter of general and common knowledge, of which the compa-

ny must be presumed to have had notice, that such league baseball clubs contract with their players for the season and not by the month. Had defendant in error accepted the offer contained in the telegram, his contract would have been for the season of 1925 and not merely a monthly employment."

See also Dallas Hotel Co. v. Lackey, 203 S.W.2d 557, 561 (Tex.Civ.App., Dallas 1947, writ ref'd n. r. e.); and Putnam v. Producers' Live Stock Marketing Ass'n, 256 Ky. 196, 75 S.W.2d 1075, 1076, 100 A. L.R. 828, 831 (1934), where it was said:

"The duration of the employment must be treated always as an open question, to be determined by the circumstances of each particular case, or as one which is dependent upon the understanding and intent of the parties to be ascertained by inference from their written or oral negotiations (as the case may be), the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction."

Appellees argue that, even if the agreement was made as claimed by appellant, it was void for want of mutuality in that appellant was not bound by the agreement to work for the entire period during which he claimed the Club was bound, citing East Line & R.R.R. Co. v. Scott, 72 Tex. 70, 10 S.W. 99 (1888). We do not agree with this argument. We consider the evidence to be sufficient at least to raise a fact issue as to whether *both* parties agreed to be bound by the alleged contract of April 13, 1966 for the entire period of June 1 to Labor Day.

Appellant's first and second points of error on appeal, which complained of the instructed verdict on the grounds that there was ample evidence of a contract of employment and no evidence of just cause for terminating the employment for the summer months of 1966, are sustained.

Appellant's third point of error complains of the instructed verdict because there was ample evidence of the damages suffered by appellant. It is not necessary, and in view of another trial would be improper, for us to comment on the probative value of the evidence offered as to damages. For that reason we do not pass upon the third point.

The fourth point of error complains that the directed verdict deprived appellant of his constitutional and statutory rights of trial by jury. As the case is being remanded for another trial, it is not necessary for us to pass on this point.

Reversed and remanded.