Ed TURNER, Appellant,

v.

Paul BYERS, Individually and doing business as Paul Byers and Associates, et al., Appellees.

No. 6657.

Court of Civil Appeals of Texas, El Paso.

Feb. 1, 1978.

Rehearing Denied March 1, 1978.

Gloria T. Svanas, Odessa, for appellant.

Finley & Scogin, Robert Scogin, Michael L. Fostel, John R. Lee, Kermit, for appellees.

## OPINION

WARD, Justice.

Ed Turner sued Paul Byers and two others upon several theories, one being for the wrongful breach of an employment contract. Trial was before a jury and an instructed verdict was entered for the two Defendants other than Paul Byers. Thereafter, the jury, upon special issues submitted, determined that the dismissal of the Plaintiff from his employment by the Defendant Byers was justified, and, further, failed to find that the Plaintiff suffered any damages. Based upon the verdict, a take nothing judgment for the Defendant Byers was entered. We affirm.

Paul Byers was doing business under the assumed name of Paul Byers and Associates as a certified registered nurse anesthetist (C.R.N.A.). He was performing his services under written contracts with the Memorial Hospital of Kermit and other hospitals located in the general area. Finding that he needed additional help, Byers contacted the Plaintiff, who was a qualified C.R.N.A., and written one-year employment contracts were entered into between the parties, the first on May 1, 1973, and the second on May 1, 1974. The last contract provides that the Plaintiff Turner will perform anesthesia services under the direction of Byers in connection with the various contracts which Byers held with the hospitals, and Byers would pay Turner a sum equal to 50% of the guaranteed base fee received from the hospitals. The contract further provided that Turner was to be responsible for the payment of his own self-employment tax, for the payment of his own federal income taxes, and that Byers was not to be responsible for any such taxes which might be attributed to an employer-employee relationship as Turner was an independent contractor. The second contract was for a

period of one year beginning May 1, 1974. While the first contract was in effect, Byers had employed Charles Parsons Clark, III, as an additional anesthetist, and the Plaintiff, under his last contract, had agreed to pay 50% of Clark's salary.

Soon after the last contract was executed, Plaintiff started appearing on various public programs where he advocated the non-payment of all income taxes. Byers knew that Turner had previously had difficulty with the Internal Revenue Service and had been arrested in February, 1974, for non-payment of income taxes. With the public appearances, Byers became concerned and talked to Turner and informed him that the business was being embarrassed by his remarks. In the conversation, Turner told Byers that he did not have anything, that he would not pay his income taxes, and that the Internal Revenue Service would have to come and get him. Byers then contacted Mr. Hoyer, his certified public accountant, who, after examining the Turner contract, informed Byers that if Turner did not pay his income taxes or social security, that Byers would then be liable under Internal Revenue regulations as Turner was an employee of Byers whose compensation was subject to withholding and social security payments, and that, because of Turner's publicity, Byers would be examined by the Internal Revenue Service. Byers again conferred with Turner about the problem of withholding taxes, and after two or three conferences, Byers said that he would have to withhold taxes in the future. Turner insisted that the terms of the contract regarding no withholding of taxes be carried out, and repeated his position that he had no assets and was never going to pay his income tax. Thereafter, on July 11, 1974, Byers informed Turner by letter that their contract was of no further force and effect, and that his services as an anesthetist with Paul Byers and Associates was terminated. Turner then applied for a position as an anesthetist at the Kermit Hospital and claimed thirty allowances for tax purposes. He was never hired and filed suit against Byers, Clark, and Ralph Lennon, who was the Administrator of the Kermit Memorial Hospital.

■ In the first count of his petition, the Plaintiff sued Byers and Clark for damages for breach of contract and for "violation of the civil rights of Turner by Byers and Clark." The proof was that Clark was an employee of Byers and did not participate in the dispute between the Plaintiff and Byers. By another count, the Plaintiff sued Byers and Lennon, the Administrator of the Kermit Hospital, on theories of conspiracy, anti-trust, monopoly, right to work, and arrangements to prevent the Plaintiff from working at any hospital. The hospital contracts were not made with Lennon, but were with the various county hospitals, and were to the effect that Byers agreed to provide coverage to the particular hospital in administering anesthesia and to serve as operating room supervisor. Separate contracts with the hospitals provided that Byers would furnish limited supervision of inhalation therapy, full emergency coverage for inhalation therapy and would recommend the hiring and firing of hospital inhalation employees. The proof was that Lennon was notified on July 11, 1974, that Byers had terminated his association with Turner, and that Turner was no longer to work under the Byers-Kermit Hospital contract; and that thereafter the Plaintiff applied for work at the Kermit Hospital as an anesthetist and was never employed. The contracts that Byers had with the hospitals were non-exclusive and did not prohibit any hospital from hiring whomever they chose, and there was no evidence of any conspiracy, price fixing, monopoly, or anti-trust violations. All points presented by the Plaintiff complaining of such matters as against all Defendants, and all points complaining of the granting of the instructed verdict in favor of the Defendants Clark and Lennon, are overruled.

■ Byers did not claim that he had any right to terminate the Turner-Clark contract because of any express written provision contained therein. That alone does not prohibit an employer from dis-

charging an employee, although this seems to be the main theme of the Plaintiff's appellate complaint. There are implied obligations in all employment contracts, including one that an employee will not do an act that has a tendency to injure the employer's business or financial interest. A serious breach of this implied obligation will justify the employer in discharging the employee. 38 Tex.Jur.2d Master and Servant, Sec. 13, p. 151 (1962). C.P.A. Hoyer testified as an expert and without objection that from his experience it was almost certain that, because of the publicity generated by the Plaintiff's tax revolt, Byers would have been examined by the Internal Revenue Service had he continued to employ Turner, and would have been liable for all the income tax and social security tax that the Plaintiff did not pay. It was his opinion that in spite of the terms of the written contract, the Internal Revenue Service would have determined that the Plaintiff was an employee since he came within the scope of two critical tests used by IRS in making their determination of an employee. First, Byers had the legal right to control both the method and result of the services performed by Turner, and, second, the Plaintiff performed services for only one employer. It was also shown that the Plaintiff had purchased his home under an assumed name, and, since he made the statement that he would not pay his taxes and had no assets from which they could be collected, this potential financial injury to the employer was submitted to the jury as good cause for the discharge. Legal and factual insufficiency points have been presented by the Plaintiff concerning these findings. In considering the legal sufficiency points, we have considered only the evidence and inferences therefrom which support the jury findings, and, in reviewing the factual sufficiency points, we have considered all the evidence, and those points are overruled. We further hold that good cause then existed for Byers to discharge Turner since Turner would under no circumstances permit Byers to withhold his taxes.

The Plaintiff complains that the jury's answer to the actual damages issue of "None" was against the great weight and preponderance of the evidence. Upon examination by Byers' attorney, the Plaintiff first testified that he could not tell how much he earned from the date of his discharge until April 30, 1975. Thereafter, upon examination by his own attorney, he testified that he had only been employed part-time as a manual laborer in construction, and that he had applied for work as a certified registered nurse anesthetist in all area hospitals, but had not been employed. Byers, on the contrary, testified that certified nurse anesthetists were hard to come by and that jobs were readily available. The general rule is that an employee who has been wrongfully discharged and seeks to recover damages cannot recover for losses which, in the exercise of reasonable diligence, he could avoid, and that, upon a wrongful discharge before the termination of the contract of employment, the employee must endeavor to reduce the loss or damage by seeking other employment. *Mr. Eddie, Inc. v. Ginsberg*, 430 S.W.2d 5 (Tex. Civ.App.—Eastland 1968, writ ref'd n. r. e.). The jury was so instructed in connection with the issue and undoubtedly found that the Plaintiff did not use reasonable diligence in mitigating his damages by seeking other employment, and that such employment was available. We have reviewed all of the evidence and the point is overruled.

Plaintiff complains that the trial Court would not permit testimony to the effect that Byers had obtained certain of his drugs by prescription in West Virginia and had brought them to Texas in violation of the Texas Drug laws. We are at a loss to determine under what theory of impeachment this testimony would have become admissible and the point is overruled.

After evidence was introduced that the Plaintiff had claimed thirty allowances for withholding tax purposes when he made his application for employment at the Kermit Hospital, the Plaintiff testified that they were allowable under Internal Revenue Service rules and regulations, and he

made a detailed explanation as to why they were legal. On cross-examination and over the Plaintiff's objection, he then testified that in the early part of the year 1974, he had been indicted, and in December, 1975, had been convicted in federal Court of income tax violation for having claimed the same thirty exemptions earlier in 1973. This proof became admissible as impeachment of the testimony offered by the Plaintiff in claiming that the allowances were perfectly legal and justified. Further, the conviction of wilfully attempting to evade payment of federal income taxes by filing false and fraudulent income tax returns was a conviction for an offense involving moral turpitude and would be admissible under the general rule. 1 McCormick & Ray, Texas Law of Evidence, Sec. 660 (2d ed. 1956). The point regarding this matter is overruled.

We have examined the balance of the Plaintiff's points and we find that they are without merit. All points are overruled and the judgment of the trial Court is affirmed.