**LONE STAR STEEL COMPANY,**
**Appellant,**

v.

**B. D. WAHL, Appellee.**

No. 8947.

Court of Appeals of Texas,
Texarkana.

May 18, 1982.

Robert E. Burns, Larry Hallman, Catherine A. Gerhauser, Burford & Ryburn, Dallas, for appellant.

Michael V. Abcarian, Johnson, Bromberg, Leeds & Riggs, Michael P. Carnes, Dallas, for appellee.

HUTCHINSON, Justice.

Appellee, B. D. Wahl, brought this suit against appellant, Lone Star Steel Company, for damages alleged to have been sustained by the breach of a written employment contract, tortious termination from employment and tortious interference with prospective economic advantage. Trial was to a jury and judgment was entered awarding Wahl the total sum of $168,600.00.

Appellant, Lone Star Steel Company (hereafter Lone Star), is a manufacturer of steel pipe, primarily pipe for use by the oil industry, through various production methods. One method was tube extrusion by forcing the material under pressure out through a hole—much like toothpaste forced out of its tube.

Lone Star had acquired a new extrusion press in Germany and put it in operation in late 1975 or early 1976 and was experiencing production problems with both the quantity and quality of the pipe produced. The quality problems were problems with concentricity (producing pipe of uniform thickness) and surface defects.

Lone Star sought out technical experts in the field of extrusion to assist with its problems. In February of 1977, Cliff Steely, Corporate Director of Personnel for Lone Star, contacted Wahl in St. Joseph, Michigan, after he had been highly recommended as an expert in extrusion technology. At Lone Star's request, Wahl visited the Lone Star plant on three occasions, once in 1977 and twice in May of 1978. On June 26, 1978, Wahl and Lone Star entered into the written contract which is the subject of this suit.

The final written employment contract had undergone two previous drafts. The second draft contained a patent clause which provided:

"This agreement shall not confer upon consultant any rights to copyrights, patents, licensing royalties from third parties, or partnership with the Company

with respect to technology or other inventions developed as a consequence of this agreement."

This clause was unacceptable to Wahl and was stricken from the draft during the contract negotiations.

By the June 26, 1978, contract Wahl was employed as a consultant and was to provide "professional services relating to the start-up and debugging of Lone Star's Extrusion Mill equipment, the training of its operating and maintenance staffs, and the production of quality tubing." He was to receive $400.00 per day plus $200.00 "travel time" for each one-way trip to and from his home to Lone Star. Lone Star agreed to employ him for a minimum of twelve days each month from July 1978 through June 30, 1979.

While Wahl was at Lone Star he observed the operation of the extrusion mill, inspected and evaluated the condition of the equipment and examined the produced pipe. He also prepared written reports on what was causing defects in the pipe as well as "teaching manuals" on extrusion for management and supervisory personnel.

On or about August 18, 1978, while at his motel, Wahl thought of a method for improving the concentricity of pipe produced by extrusion. He set forth his idea in writing in a "Record of Invention," the first step toward acquiring a patent, and made drawings illustrating the idea. He gave a copy of the Record of Invention to Mr. Steely and asked him to witness his signature on the document. Mr. Steely refused to do so but told Wahl he would look into it. Wahl left some copies with Steely who later discussed them with the manager of the extrusion mill and the chief executive officer of Lone Star. An amendment for the employment contract was prepared which contained a patent and invention clause to operate retroactively from the date of the original contract. This amendment provided, among other things:

"... Consultant will treat as for Lone Star's sole benefit, and fully and promptly disclose and assign to Lone Star with-

out additional compensation, all ideas, discoveries, inventions and improvements, patentable or not, which during the term thereof are made, conceived or reduced to practice by Consultant, alone or with others during or after usual working hours, either on or off the job, and which are related to Lone Star's business or interest or which result from work assigned to Consultant by Lone Star."

This amendment was presented to Wahl for his approval in early September of 1978. Wahl refused to sign the amendment and was told by Mr. Steely to leave the plant. Mr. Steely also told the security force not to allow Wahl back into the plant.

Wahl testified that, from September 5, 1978, through the end of June 1979, he made himself "available" to work for Lone Star for at least twelve days each month. He did not set aside twelve specific days at the beginning of each month but made no effort to gain employment for those days and spent them at his home writing letters, working on his house and reading. He merely held himself open to return to work should Lone Star request it, even though he knew that he could not work there since he refused to sign the amendment and was not to render further services under the contract.

Lone Star's request for submission of special issues regarding whether or not it had good cause to terminate the contract of employment were by the court refused and it is here contended that the trial court, on its own motion, improperly instructed a verdict that no good cause existed for the termination of the contract. Such a contention is inaccurate and misleading in that the trial court did not instruct a verdict against Lone Star on its defense of good cause. It merely refused to submit the requested issues in this regard, apparently upon the ground that the evidence in that regard did not present an independent theory of defense. This Court will avoid labeling this as an instructed verdict situation and will seek to determine if the trial court erred in its refusal to submit the requested "good cause" issues.

Good cause is essentially an employer's only defense in a breach of contract action when the employee has been employed for a definite period of time. *Hoffrichter v. Brookhaven Country Club Corp.*, 448 S.W.2d 843 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.); *Fairbanks, Morse and Co. v. Carsey*, 109 S.W.2d 985 (Tex.Civ.App. —Dallas 1937, writ dism'd); 38 Tex.Jur.2d *Master and Servant* § 12 (1962). Lone Star asserts that it had good cause to discharge Wahl because his refusal to sign the contract amendment constituted a serious breach of an implied obligation of his employment contract and was a serious breach of loyalty to his employer. In support of these assertions, the cases of *North v. Atlas Brick Co.*, 281 S.W. 608 (Tex.Civ.App.—El Paso), *modified*, 288 S.W. 146 (Tex.Com. App.1926, holding approved); *Standard Parts Co. v. Peck*, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560, 561 (1924); and *Solomons v. United States*, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667 (1890), are stressed.

Pertaining to the existence of a "shop right", the case of *North v. Atlas Brick Co.*, supra, remains the law in Texas. However, the asserted "shop right" issue was not legally involved in this case. Throughout the negotiations between the parties for the entering of an employment contract the issue of patent rights was specifically discussed and the patent clause proposed by Lone Star was stricken from the draft of the contract upon the refusal of Wahl to agree to it. The contract negotiations and the open discussions during the negotiations of Wahl's determination to retain his patent rights, prevents the existence of a "shop right" as found and approved in the *North* case. In a written contract an additional provision will be implied only when it is necessary to effectuate the intention of the parties. *Danciger Oil & Refining Co. of Texas v. Powell*, 137 Tex. 484, 154 S.W.2d 632 (1941); *Weil v. Ann Lewis Shops*, 281 S.W.2d 651 (Tex.Civ.App. —San Antonio 1955, writ ref'd).

Wahl, by a reply point, states that Lone Star waived its right to assert its points of error numbered 4 through 24 by its failure

to have the trial court rule upon its objections to the jury charge as required by Rule 272, of the Texas Rules of Civil Procedure. This rule requires that objections to the charge be presented to the court in writing, or dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. Failure to do so results in a waiver of the objection. The rule also provides that, before the charge is read to the jury, the trial judge must announce his rulings on the charge and endorse his rulings on the objections if written or dictate same to the court reporter in the presence of counsel. The parties dictated their objections to the charge but the court ruled on only one objection, Lone Star's objection to special issue number 5.

Rule 272 and the cases interpreting it are clear. If the court's ruling is absent, objections to the submission of the special issues are waived. *Reliance Ins. Co. v. Dahlstrom Corp.*, 568 S.W.2d 733 (Tex.Civ. App.—Eastland 1978, writ ref'd n. r. e.); *Howard v. Bolin Warehouses, Inc.*, 422 S.W.2d 489 (Tex.Civ.App.—Texarkana 1967, no writ).

Lone Star's point of error number 16 complains of the submission of Special Issue Number 6 for the reason that malicious breach of contract is not a legally recognized cause of action. By point of error number 19, Lone Star complains of the submission of Special Issue Number 7 for the reason that punitive damages are not recoverable in a suit for breach of contract. By point of error number 22, Special Issue Number 8 is objected to on the ground that it permits the recovery of attorney fees under Article 2226, Tex.Rev.Civ.Stat.Ann. (Vernon 1971), not limited to a breach of contract cause of action. These three points of error are subject to Rule 272 and will not as such be considered.

Points of error numbered 4 through 15, 17 and 18, 20 and 21, 23 and 24, are "insufficient evidence" and "no evidence" points and have not been waived and will be here considered. Rule 279, Tex.R.Civ.P.; 4 Tex. Jur.3d *Appellate Review* §§ 136 and 137.

By Special Issue Number 1 the jury failed to find that Wahl could with reasonable diligence have reduced his loss or damage from Lone Star's refusal after September 5, 1978, to pay him further sums under the written contract. Special Issue Number 2 inquired of the amount that he could have earned from other employment. This issue was not answered because it was conditioned upon the jury's finding that he could have reduced his loss. Lone Star by its points of error 4, 5 and 6 complains that the trial court erred in rendering judgment on the jury's answer because Wahl as a matter of law and by the great weight and preponderance of the evidence failed and refused to mitigate his damages.

It is a well recognized principle of law that "[i]f an employee is wrongfully discharged by his employer, this is a total breach for which only a single action lies, judgment being obtainable for all wages past due and for all future promised wages less what can be earned by reasonable effort in similar employment." 4 A. Corbin, Contracts § 958 (1951). This is the law in Texas. *Professional Services, Inc. v. Amaitis*, 592 S.W.2d 396 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.); *Turner v. Byers*, 562 S.W.2d 507 (Tex.Civ.App.—El Paso 1978, writ ref'd n. r. e.). It is unquestioned that Lone Star repudiated the entire agreement when Wahl refused to sign the contract amendment. Wahl testified that even though he was told that if he didn't sign the amendment he could not work there anymore, he kept himself available for twelve days per month. Since there was a clear repudiation of the entire agreement by Lone Star, Wahl had a duty to mitigate his damages. This, by his own testimony he failed to do.

Because Wahl's lack of diligence in mitigating his damages was proved as a matter of law the jury should have been allowed to find the amount by which the damages could have been reduced.

In points of error numbered 7 through 14, Lone Star raises no evidence and insufficient evidence points regarding the jury's

answers to special issues numbered 3, 3A, 4, and 5. In response to these issues the jury made the following findings: (1) Lone Star intentionally interfered with Wahl's ability to obtain clients and income after June 10, 1979; (2) such interference was the proximate cause of Wahl's decline in income after that time; and (3) $20,000.00 would reasonably compensate Wahl for the decline in income. In its 15th point of error, Lone Star asserts that the court erred in rendering judgment based on these findings because a mere breach of contract cannot constitute tortious interference with business relationships.

■ By the submitted issues Wahl sought damages for complained of interference with future contracts. In *Leonard Duckworth, Inc. v. Michael L. Field and Co.,* 516 F.2d 952 (5th Cir. 1975), the court, applying Texas law, set out the following requirements for recovery in such a case: "(1) there was a 'reasonable probability' that [plaintiff] would have entered into a contractual relationship; (2) defendant acted *maliciously* by *intentionally preventing* the relationship from occurring *with the purpose of harming plaintiff*; (3) the defendant was not privileged or justified, and (4) actual harm or damage occurred as a result." (Emphasis added). Malice, within the context of this text, means an unlawful act done intentionally and without justification or excuse. *Light v. Transport Insurance Company,* 469 S.W.2d 433 (Tex.Civ. App.—Tyler 1971, writ ref'd n. r. e.); *Leonard Duckworth, Inc. v. Michael L. Field,* supra. Malice must be proven by convincing evidence, for it will not be lightly inferred. *Phillips Chemical Company v. Hulbert,* 301 F.2d 747 (5th Cir. 1962).

■ It is noted that an issue pertaining to the element of malice was not submitted to the jury and Lone Star did not object to its omission. Nevertheless, a finding of malice cannot be deemed unless the evidence supports such a finding. *Southern Roofing & S. M. Co. v. Paramount Const. Co.,* 512 S.W.2d 781 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.). In determining whether there is evidence to support a deemed finding, a reviewing court must consider the evidence in the light most favorable to the judgment. *Miller Seed Company v. Pool,* 508 S.W.2d 151 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.).

■ The record here has been reviewed and there appears to be no evidence of any malice on the part of Lone Star. According to Wahl, he had no further personal contact with Lone Star personnel after he left the premises and there is no evidence that Lone Star ever contacted any of Wahl's prospective employers and certainly made no effort to induce or influence them not to employ him. Since there was no evidence of malice, the case must be reversed on these points as well.

■ The jury in response to special issues numbered 6 and 7 found that Lone Star maliciously attempted to obtain from Wahl an assignment of his inventions and patents by threatening to terminate his employment contract and awarded him punitive damages in the sum of $78,800.00. In view of the reversal of the actual damage findings, the punitive damage finding must also be reversed.

The cause is reversed and remanded for a new trial.