WAYNE 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00716-CV







Victoria Joint Venture and Thomas A. Anderson, III, Appellants




v.




James Wayne, John Pouland, and Norman Donelson, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 93-09229, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 This is an appeal of a summary judgment granted in favor of appellees James
Wayne, John Pouland, and Norman Donelson. Appellants Thomas A. Anderson, III and Victoria
Joint Venture (collectively the "Joint Venture") sued appellees and two other defendants, Helen
Walker and the Victoria County Public Facilities Corporation (the "Public Facilities
Corporation"), on multiple causes of action arising out of the award of a state leasehold to Wayne
without competitive bidding. On July 21, 1994, the trial court granted an interlocutory summary
judgment in favor of Wayne, (1) and on October 3, 1994, the trial court granted summary judgment
in favor of Pouland and Donelson. The Joint Venture appeals the trial court's judgment in ten
points of error. We will affirm the judgment of the trial court.



BACKGROUND


 In 1980, the Texas General Service Commission (the "GSC") invited the Joint
Venture to submit a bid under the competitive bidding statute to provide a leasehold for the offices
of the Texas Department of Human Services (the "TDHS") in Victoria, Texas. After the Joint
Venture successfully bid to provide an office building for the TDHS, it obtained financing,
acquired a site, and constructed a building to be used for the TDHS leasehold. The primary term
of the Joint Venture lease expired on August 31, 1993 (the "1980 Joint Venture lease").

 Before the expiration of the 1980 Joint Venture lease, the Joint Venture and the
TDHS discussed an increase in the size of the leasehold. Because economic reasons made it
impractical to add to the existing space at the prevailing rental rate, it was decided that the
expansion would be accomplished through a new competitive bid for a leasehold to meet the larger
space requirements. By letter dated November 23, 1992, the TDHS advised the Joint Venture that
it would be afforded an opportunity to bid. However, the GSC never issued an invitation for a
bid. Instead, the Joint Venture learned in April 1993 of a plan to relocate the TDHS leasehold
without competitive bidding to the Town Plaza Mall, which Wayne owned.

 When the Joint Venture learned of this proposal, Anderson contacted the GSC and
was told that the appropriate GSC representative, Donelson, could not meet with him until April
22, 1993. Anderson scheduled a meeting with Donelson for that date and was assured by Amy
Finley, a GSC lease planner, that no action on the lease would be taken before that time. Despite
this assurance, the State, on behalf of the TDHS, entered into a "new lease" with Wayne on April
21, 1993 without competitive bidding. (2) This lease term began to run on September 1, 1993, after
the expiration of the 1980 Joint Venture lease.

 The Joint Venture sued appellees on multiple causes of action arising out of the
award of the leasehold to Wayne without competitive bidding. The Joint Venture alleged that
Pouland, Donelson, and Wayne tortiously interfered with its prospective leasehold contract with
the State of Texas and participated with the other defendants in a civil conspiracy to interfere with
the prospective leasehold. The Joint Venture further alleged that Wayne libeled the Joint Venture
through disparaging statements and injurious falsehood. (3) Pouland and Donelson filed a motion
for summary judgment asserting the affirmative defense of official immunity and claiming that the
Joint Venture had no cause of action against them for civil conspiracy or interference with a
contract or a prospective contract as a matter of law. Wayne also filed a motion for summary
judgment contending that, as a matter of law, the Joint Venture had no cause of action against him
for interference with a contract or prospective contract, civil conspiracy, or business
disparagement. The trial court granted appellees' summary judgment motions.



DISCUSSION


 In ten points of error, the Joint Venture complains that the trial court erred in
granting appellees' motions for summary judgment. The standards for reviewing a motion for
summary judgment are well established:



(1) The movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a
matter of law.


(2) In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as
true.


(3) Every reasonable inference must be indulged in favor of the nonmovant and
any doubts resolved in its favor. 



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 The question on appeal is not whether the summary-judgment proof raises a fact
issue, but whether the summary-judgment proof establishes as a matter of law that no genuine
issue of material fact exists as to one or more of the essential elements of the plaintiff's cause of
action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). When the order does
not give a specific reason for granting the judgment, the nonmovant, on appeal, must show why
each ground asserted in the motion is insufficient to support the order. Rogers v. Ricane Enters.,
Inc., 772 S.W.2d 76, 79 (Tex. 1989); McCrea v. Cubilla Condominium Corp., 685 S.W.2d 755,
757 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

 The Joint Venture alleges that the following events gave rise to its lawsuit against
appellees. In June 1992, the Victoria County voters had rejected a general obligation bond issue
to finance the acquisition of facilities for the County Health Department. One of the facilities the
County considered acquiring with these bonds was the Town Plaza Mall. Though the bond issue
was rejected, Walker, County Judge of Victoria County, met with Wayne in October of 1992 to
discuss acquisition of Town Plaza Mall by Victoria County for use in part by the County Health
Department. She also discussed with Wayne her intention to meet with representatives of the GSC
to request relocation of the TDHS leasehold to Town Plaza Mall. According to the Joint Venture,
Walker's plan was to get other state agencies to relocate at the Town Plaza Mall, thereby
generating sufficient rental income from the State of Texas for Victoria County to issue revenue
bonds to purchase the mall.

 The Joint Venture contends that Walker later met with Pouland and Donelson of
the GSC to persuade them to approve the award of the TDHS leasehold to Wayne without a
competitive bid. On the same day as this meeting, Pouland and Donelson directed Finley, one
of their staf members, to contact the TDHS and induce it to abandon its request for the
competitive bid and agree to move the TDHS office into the Town Plaza Mall. The TDHS
leasehold was subsequently awarded to Wayne without competitive bidding. Walker thereafter
moved forward with her plan to acquire the Town Plaza Mall and talked to potential investors
about the revenue bonds. She obtained authority from the Victoria County Commissioner's Court
to issue revenue bonds for the purchase of the Town Plaza Mall and to retain financial advisors
and bond counsel to prepare the bond issue. The Public Facilities Corporation, which was formed
as a nonprofit corporation for the express purpose of issuing revenue bonds and purchasing the
Town Mall Plaza from Wayne, entered into a contract with Wayne to purchase the Town Plaza
Mall on July 1, 1993.


A.  Tortious Interference with Contract

 The Joint Venture complains in its fifth and tenth points of error that the trial court
erred in granting appellees' motions for summary judgment because they failed to establish as a
matter of law that the Joint Venture had no cause of action against them for tortious interference
with a prospective contract. It further asserts in its sixth point of error that the trial court erred
in granting Pouland and Donelson's motion for summary judgment because the Joint Venture
raised fact issues as to the cause of action for tortious interference with a prospective contract.

 We must first address a preliminary matter raised by the Joint Venture. The Joint
Venture challenges the sufficiency of appellees' summary-judgment proof, arguing that appellees
failed to make specific references to the evidence supporting their summary judgment motions. (4)
Rule 166a(c) of the Texas Rules of Civil Procedure provides that the "judgment sought shall be
rendered forthwith if (i) the deposition transcripts . . . and other discovery responses referenced
in the motion or response, and (ii) pleadings, admissions, affidavits . . . on file at the time of the
hearing, or filed thereafter" show that the movant is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); Wilson v. Burford, 38 Tex. Sup. Ct. J. 680 (May 25, 1995). The rule
contains no requirement that the evidence be referenced more specifically than being incorporated
into the motion, and we refuse to hold that a motion for summary judgment is defective if it fails
to set out the exact evidence upon which it relies. Both Donelson and Pouland's and Wayne's
motions for summary judgment provided: "This Motion for Summary Judgment is based on the
pleadings, answers to interrogatories, affidavits, deposition testimony attached, and all other
summary judgment evidence properly on file at the time of hearing." Thus, the summary-judgment evidence was incorporated into the motion. We accordingly overrule the Joint Venture's
ninth point of error.

 The elements of a cause of action for tortious interference with a prospective
contract are as follows: (1) a reasonable probability in view of all the circumstances that the
plaintiff would have entered into a contract; (2) the defendant acted maliciously by intentionally
preventing the relationship from occurring with the purpose of harming the plaintiff; (3) the
defendant was not privileged or justified; and (4) actual harm or damage resulted. Lone Star Steel
Co. v. Wahl, 636 S.W.2d 217, 222 (Tex. App.--Texarkana 1982, no writ); Verkin v. Melroy, 699
F.2d 729, 732 (5th Cir. 1983) (applying Texas law). In order to establish the first element of this
cause of action, the plaintiff must show a reasonable probability that, absent the defendant's
interference, it would have entered into a contract. Verkin, 699 F.2d at 732. Appellees assert
that their summary-judgment proof established that there was no reasonable probability that,
absent their alleged interference, the Joint Venture would have entered into a new lease with the
State, and thus that they proved as a matter of law that no genuine issue of material fact exists as
to an essential element of the Joint Venture's cause of action for tortious interference. We agree.

 The Joint Venture relied on one of two possible prospective contracts in alleging
that there was a reasonable probability that they would have entered into a contract with the State. 
The first prospective contract the Joint Venture may have relied upon was the extension of the
1980 Joint Venture lease. The more likely prospective contract upon which the Joint Venture
relied was the lease that it would have entered with the State if the State had advertised for bids
and the Joint Venture had been the successful bidder. In either case, appellees' summary-judgment proof established that there was no reasonable probability that the Joint Venture would
have acquired a lease with the State of Texas to house the TDHS absent appellees' alleged
interference.

 The 1980 Joint Venture lease expired on August 31, 1993. The lease provided that
the lessee, the State of Texas, had the option to renew the lease; under no terms of the lease was
the State obligated to renew the lease. Appellees' summary-judgment proof established that the
lease was not renewed because the Joint Venture and the State could not agree on terms for
renewal. The Joint Venture does not contend that Pouland and Donelson breached the terms of
the 1980 lease or that Wayne had anything to do with the decision not to renew the lease. 
Therefore, appellees established that there was no reasonable probability that, absent appellees'
interference, the State would have renewed the Joint Venture lease.

 The Joint Venture's allegation that there was a reasonable probability that the State
would have entered into a new lease with it absent appellees' interference was based on two
contingencies: (1) if the State had decided to advertise for bids, and (2) if the Joint Venture had
been the successful bidder. The summary-judgment proof established that the State was not
required by law to engage in competitive bidding under the circumstances. Therefore, absent
appellees' alleged interference, the State may still have opted not to advertise for bids. Moreover,
the summary-judgment evidence established that even if the State had advertised for bids, the Joint
Venture may not have been the successful bidder.

 The competitive bidding statute requires competitive bidding when the State leases
space from a private source. See Tex. Rev. Civ. Stat. Ann. art. 601b, § 6.05(c) (West Supp.
1995) (the "competitive bidding statute"). (5) The statute, however, does not apply when the State
amends an existing lease. Appellees' summary-judgment proof established that on December 2,
1992, the State of Texas entered into a lease agreement with Wayne for space in the Town Plaza
Mall (the "1992 Wayne lease"). Section 5(a) of the 1992 lease (the "add-on provision") permitted
the State to lease additional space: "Lessor further agrees that should the Lessee request
additional space during the term of this lease, (6) Lessor may furnish such as is requested by the
Lessee, if available, adjacent to space covered by this lease . . . ." Section 5(l) empowered the
State to assign any State agency to occupy all or part of the leased space.

 Texas courts have long held that the interpretation of an unambiguous contract is
a question of law that is proper for summary judgment. Myers v. Gulf Coast Minerals
Management Corp., 361 S.W.2d 193, 196 (Tex. 1962). If a contract is so worded that it can be
given a certain and definite meaning or interpretation, it is not ambiguous. Alba Tool & Supply
Co. v. Industrial Contractors, Inc., 585 S.W.2d 662, 664 (Tex. 1979). The Wayne lease is an
unambiguous contract that can be given a definite interpretation: the add-on provision permitted
the State to amend the Wayne lease to include additional space for the TDHS. In a letter to Joe
Langston of the TDHS, Wayne wrote that the additional space was provided "as an add on to the
existing lease . . . to be constructed for [the TDHS], adjacent to the existing lease under the same
terms and conditions as the existing lease." This clearly falls within the scope of sections 5(a) and
5(l) of the Wayne lease. The Joint Venture asserted at oral argument that because the additional
space consists of new construction in the Town Plaza Mall, the additional space falls outside the
scope of the add-on provision. We disagree because such a restriction appears nowhere in the
lease. 

 In November 1992, the TDHS had notified the Joint Venture that it was going to
advertise for bids for a new leasehold. During the time between November 1992 and April 1993,
the TDHS decided not to advertise for bids but instead chose to amend the 1992 Wayne lease on
April 21, 1993 to include additional space for the TDHS in the Town Plaza Mall. The State of
Texas and Wayne did not enter into a new lease, which would require compliance with the
competitive bidding statute, but instead amended the existing Wayne lease to add space for use
by the TDHS as expressly authorized by sections 5(a) and 5(l) of the lease. In such a
circumstance, competitive bidding was not required.

 In addition, appellees' summary-judgment evidence established that the Joint
Venture's assertion that it would have been the successful bidder if the State had advertised for
bids was based on pure speculation, not a reasonable probability. (7) We thus hold that appellees
proved as a matter of law the nonexistence of an essential element of the Joint Venture's cause of
action for tortious interference with a prospective contract--the reasonable probability that the Joint
Venture would have entered into a contract with the State absent appellees' alleged interference. 
We accordingly overrule the Joint Venture's fifth point of error in its entirety and its tenth point
of error in part. (8) 

 In its sixth point of error, the Joint Venture argues that it raised a fact issue about
the existence of a prospective contract. According to the Joint Venture, its summary-judgment
evidence established that if the new TDHS lease had been put to a competitive bid, the Joint
Venture would have submitted a lower bid than Wayne, and thus there was a reasonable
probability that the Joint Venture would have acquired the lease. The Joint Venture relies on the
deposition of Finley, who testified that the State usually awards a bid to the bidder who can meet
the specifications with the lowest price. According to the Joint Venture, this evidence established
the existence of a reasonable probability that it would have acquired the lease. 

 Competitive bidding was not required in this situation, and thus it is irrelevant that
the Joint Venture would have submitted a lower bid than Wayne. Additionally, Anderson
admitted during his deposition that he did not know the particular specifications in this case;
therefore, his assertion that the Joint Venture could submit the low bid was based on speculation.

We conclude that the Joint Venture failed to raise of a fact issue as to the reasonable probability
that it would have entered into a contract with the State. The Joint Venture's sixth point of error
is overruled.

 There is an alternative basis for overruling the Joint Venture's points of error
relating to its cause of action for tortious interference with a prospective contract. The third
element of a claim for tortious interference with a prospective contract requires the plaintiff to
prove that the defendant's actions were not privileged or justified. "[E]nforcing or complying
with one's own valid contract does not constitute unjustifiable interference with another's
contract." Schoellkopf v. Pledger, 778 S.W.2d 897, 904 (Tex. App.--Dallas 1989, writ denied)
(holding that interference with contractual relations is privileged when defendant possesses equal
or superior interest to that of plaintiff in subject matter of contract); see also Maynard v.
Caballero, 752 S.W.2d 719, 721 (Tex. App.--El Paso 1988, writ denied) (noting that action to
protect one's contractual right is ordinarily justification for interference with another's contract). 
Therefore, interference with a prospective contract is justified if the defendant's actions were
taken to enforce or protect its own contractual rights. Appellees' summary-judgment evidence
established that they acted pursuant to their contractual rights under the 1992 Wayne lease in
adding on space for the TDHS. Moreover, the evidence established that Wayne, as a competitor
of the Joint Venture, had the right to solicit the State to amend the 1992 Wayne lease to locate the
TDHS in the Town Plaza Mall. The Joint Venture concedes that Wayne had the right to engage
in such solicitation but argues that in the present case, he acted outside the scope of this right by
inducing the State to violate the competitive bidding statute. As we have already discussed, there
was no violation of the competitive bidding statute. Therefore, appellees acted pursuant to their
contractual rights, and any interference with the Joint Venture's prospective contract was justified.



B.  Civil Conspiracy

 The Joint Venture asserts in its seventh and tenth points of error that the trial court
erred in granting summary judgment because appellees' motions for summary judgment failed to
establish as a matter of law that the Joint Venture had no cause of action against them for civil
conspiracy. In its eighth point of error, the Joint Venture complains that the trial court erred in
granting Pouland and Donelson's motion for summary judgment because the Joint Venture raised
fact issues as to the civil conspiracy claim.

 There are five essential elements of a cause of action for civil conspiracy: (1) two
or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or
course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. 
Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983); see also Triplex Communications,
Inc. v. Riley, 38 Tex. Sup. Ct. J. 765, 767 (June 8, 1995). The Joint Venture alleged that (1) all
five defendants, including appellees; (2) intentionally conspired to keep the Joint Venture from
obtaining a new lease; (3) corresponded or met collectively or in small groups to agree on a
course of action to prevent the Joint Venture from obtaining a new lease; (4) took actions to insure
that Wayne would be awarded the lease without complying with the competitive bidding statute
and conspired to violate the competitive bidding statute; and (5) that these actions resulted in
damages. Appellees claim that the uncontroverted summary-judgment proof conclusively
established the absence of the fourth essential element of a civil conspiracy claim--one or more
unlawful, overt acts.

 As we have already dicussed, appellees' summary-judgment evidence conclusively
established that there was no violation of the competitive bidding statute. The State of Texas and
Wayne did not enter into a new lease, which would require compliance with the competitive
bidding statute, but instead amended the existing Wayne lease to add space for use by the TDHS
as expressly authorized by sections 5(a) and 5(l) of the 1992 Wayne lease. The competitive
bidding statute requires competitive bidding when the State leases space from a private source;
the statute does not apply when the State amends an existing lease. There was no violation of the
competitive bidding statute and, therefore, no unlawful, overt act.

 Appellees further contend that the acts of adding space to the Wayne lease and
assigning that space to the TDHS were taken pursuant to a legislative mandate to streamline health
and human services by co-locating state health and human services agencies. See Tex. Rev. Civ.
Stat. Ann. art. 4413(505), § 3.08 (West Supp. 1995). Co-location is required by statute if "client
access would be enhanced, the cost of co-location is not greater than the combined operating costs
of the separate offices or facilities of those agencies, and the co-location would improve the
efficiency of the delivery of services." Id. § 3.08(b). Before the lease amendment at issue in the
instant cause, the State had increased its rental space at the Town Plaza Mall for use by the
Commission for the Blind and the Department of Protective and Regulatory Services, which are
both health and human services agencies. See id. § 3.08(c)(4), (11). Appellees' summary-judgment proof established that the TDHS viewed the lease amendment co-locating the TDHS at
the Town Plaza Mall as a means of complying with the co-location statute, thereby enhancing
service to TDHS clients. 

 The co-location statute provides additional support for appellees' argument that
their actions were not illegal but were in fact pursuant to legislative mandate. However,
appellees' argument is not dependent upon the co-location statute. Even assuming no such statute
existed, appellees' actions were lawful because the Wayne lease provisions clearly enabled the
State to amend the lease to provide additional space to house the TDHS without competitive
bidding. We hold that appellees conclusively established that no genuine issue of material fact
exists as to an essential element of the Joint Venture's cause of action for civil conspiracy and,
therefore, overrule the Joint Venture's seventh point of error in its entirety and its tenth point of
error in part. 

 In its eighth point of error, the Joint Venture complains that the trial court erred
in granting Pouland and Donelson's motion for summary judgment because it raised fact issues
as to the cause of action for civil conspiracy. The Joint Venture alleged that appellees committed
an unlawful, overt act in violation of the competitive bidding statute. The Joint Venture made no
other allegations of unlawful actions on the part of appellees. Because there was no violation of
the competitive bidding statute, the Joint Venture failed to establish a fact issue regarding an
essential element of its cause of action for civil conspiracy--an unlawful, overt act. We overrule
the Joint Venture's eighth point of error.



C.  Business Disparagement

 In its tenth point of error, the Joint Venture complains that the trial court erred in
granting Wayne's motion for summary judgment because he failed to meet his burden of proving
he was entitled to judgment as a matter of law on his cause of action for business disparagement. 
The elements of business disparagement include: (1) publication by defendant of disparaging
words; (2) falsity; (3) malice; (4) lack of privilege; and (5) special damages. Hurlbut v. Gulf
Atlantic Life Ins. Co., 749 S.W.2d 762, 766 (Tex. 1987). The cause of action for business
disparagement in the instant cause is based on letters Wayne wrote to Comptroller John Sharp and
Senator Ken Armbrister. In those letters, Wayne wrote: 



The existing [TDHS] office is substandard in terms of quality of construction,
location, parking and is too small for its current staffing level, not to mention the
additional positions that should have already been filled due to lack of space.


 Wayne claims that the statements made in his letters were true. (9) His summary-judgment proof includes his deposition, in which he testified to the truth of the statements in the
letters. He described the construction problems, location problems, parking problems, and space
limitations. Rule 166a(c) provides that a summary judgment "may be based on uncontroverted
testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct,
otherwise credible and free from contradictions and inconsistencies, and could have been readily
controverted." Wayne's summary-judgment evidence falls within Rule 166a(c). (10) Wayne thus
established that no genuine issue of material fact exists as to an essential element of the Joint
Venture's cause of action for business disparagement--falsity. We accordingly overrule the Joint
Venture's tenth point of error in its entirety.



CONCLUSION


 We hold that appellees' summary-judgment proof established as a matter of law that
no genuine issue of material fact exists as to one or more essential elements of the Joint Venture's
causes of action for tortious interference with a contract and prospective contract, civil conspiracy,
and business disparagement. It is therefore unnecessary to address the Joint Venture's first,
second, third, and fourth points of error relating to Pouland and Donelson's affirmative defense
of official immunity. (11) We affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 30, 1995

Do Not Publish

1.   On July 22, 1992, the trial court granted an interlocutory summary judgment as to
defendants Walker and the Public Facilities Corporation and severed the Joint Venture's
claims against the two defendants into a separate cause (No. 93-0229-A). A separate
appeal of the judgment in that cause was taken to this Court (Cause No. 03-94-00487-CV)
and was consolidated with the present cause for purposes of oral argument.
2.   The Joint Venture characterizes the agreement between Wayne and the TDHS as a
new lease while appellees contend that it was in fact a lease amendment to an existing
lease. This issue, which lies at the heart of the dispute, will be addressed in our
discussion.
3.   The Joint Venture asserted only one cause of action against defendants Walker and
the Victoria County Public Facilities Corporation. It alleged that the two defendants
participated with appellees in a civil conspiracy to tortiously interfere with a prospective
contract.
4.   The Joint Venture expressly challenges the sufficiency of the summary-judgment
evidence supporting Wayne's summary judgment motion in its ninth point of error. It
also raises the issue of the sufficiency of the evidence supporting Pouland and Donelson's
motion in the discussion of its fifth and sixth points of error.
5.   Section 6.05 is entitled "Leasing Space From Other Sources." Tex. Rev. Civ. Stat.
Ann. art. 601b, § 6.05.
6.   The primary term of the Wayne lease expires in February 2000.
7.   Appellant Anderson testified during his deposition:


Q: But you're not saying with any reasonable degree of certainty or
reasonable probability, that it would have been awarded to you?


A: No. I feel like I have a high probability that I would have because I would
have been highly motivated to provide space at the lowest possible cost and
had been doing so in other competitive bids for some time.


Q: But you don't know what the specifications were going to be, do you?


A: Generall[y] I do. Specifically I didn't. No one did.


Q: And you didn't know what anywone else was going to bid.


A: No.


Q: So to say that it was going to be awarded to you would be speculation,
wouldn't it?


A: I think that's what you asked me to do, was to speculate.


Q: Well, would it be speculation to say it would be awarded to you?


A: Right.


(Emphasis added.)
8.   The Joint Venture complains in its tenth point of error that the trial court erred in
granting Wayne's motion for summary judgment because Wayne failed to meet his
burden of proving he was entitled to judgment as a matter of law on the causes of action
for tortious interference with a contract and a prospective contract, business
disparagement, and civil conspiracy. This portion of our discussion disposes of the Joint
Venture's cause of action for tortious interference with a prospective contract. It also
disposes of the Joint Venture's claim for tortious interference with a contract. A claim
for tortious interference with a contract requires that there be a contract subject to
interference. O'Connor v. Glitsch Eng'g & Sales Corp., 589 S.W.2d 808, 809 (Tex. Civ.
App.--Dallas 1979, no writ). As we have already discussed, the 1980 Joint Venture lease
expired by its own terms on August 31, 1993. Therefore, there was no existing contract
subject to interference, and appellees established the nonexistence of a genuine issue of
material fact with regard to an essential element of the Joint Venture's cause of action for
tortious interference with a contract. 
9. [9]  At common law, the defamatory statement was presumed to be false, and truth was an
affirmative defense. However, the plaintiff in a business disparagement claim must plead and
prove the falsity of the statement. Hurlbut, 749 S.W.2d 766.
10.   The evidence is clear, positive, and direct. It is also credible and free from
contradiction; although the evidence could have been readily controverted, the Joint
Venture produced no summary-judgment evidence to contradict Wayne's testimony.
11.   When a defendant-movant moves for summary judgment on the basis of an
affirmative defense, the movant must expressly present and conclusively prove each
essential element of the affirmative defense. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex.
1972). Unless the movant conclusively establishes the affirmative defense, the nonmovant
plaintiff has no burden in response to the motion. Gonzales v. City of Harlingen, 814 S.W.2d
109, 112 (Tex. App.--Corpus Christ 1991, writ denied). Governmental employees can assert
the affirmative defense of official immunity from suit only if they establish three elements: (1)
that the suit arises from the performance of discretionary duties; (2) that they acted within the
scope of their authority; and (3) that they acted in good faith. City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994). Our review of the evidence indicated the possible
existence of fact issues with regard to the elements of appellees' affirmative defense of official
immunity. Because we resolved the appeal on other grounds, it was unnecessary to further
examine appellees' official immunity defense.