Jane WATTS and Franklin
Watts, Appellants,

v.

ST. MARY'S HALL, INC. d/b/a St.
Mary's Hall and St. Mary's Montessori School, Appellees.

No. 04–82–00234–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 19, 1983.
Rehearing Denied Dec. 12, 1983.

Gary Pinnell, San Antonio, for appellants.

Seagal V. Wheatley, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

Appellants, Jane Watts and husband, Franklin Dale Watts, sued appellees, St. Mary's Hall and its schools, for breach of her employment contract. At a jury trial the court directed a verdict against Watts in favor of St. Mary's Hall. By two points of error Watts challenges the correctness of that ruling: 1) that the pleadings and evidence were sufficient to submit Watts' special issues to the jury; and 2) that Watts proved a *prima facie* case showing breach of the employment contract. We overrule the contentions and affirm the judgment.

St. Mary's Hall is a private school in San Antonio. For the academic year of 1979–80, Watts worked as a house director at the residential hall, the terms of that employment contained in a letter written by the school's headmistress, Joan Mellard. The school renewed Watts' employment for a second academic year, 1980–81, by a handwritten letter from Mellard. During the second year Watts' daughter attended St. Mary's Hall's Montessori School (pre-first grade) at a reduced tuition. The school also provided Watts and her family with housing and food as part of the compensation.

On December 19, 1980, St. Mary's Hall discharged Watts as a result of an incident occurring a week earlier at her dormitory involving drunken girl students. She slapped one of the girls. Watts failed to report the rules infractions to the headmistress; she was discharged. The school did not discharge two other women in similar positions who were present at the incident even though they, too, did not report the incident at that time.

Watts brought suit for the difference between her annual salary of $5300.00 and what she was actually paid prior to the discharge, $2120.00. She also asked for the value of the housing and meals lost because of the forced off-campus move at termination of her employment. And she asked for attorney's fees.[1] Watts presented the testimony of two witnesses, herself and her attorney, and rested her case in chief. St. Mary's Hall moved for an instructed verdict, and the trial court granted the motion.

Watts, the only witness to relate the facts of the incident leading to her discharge, admitted she as the house director was responsible for the "events that took place in the dormitory ... running it, seeing that things were run in accordance with school policy, with school practices." This exchange occurred on cross-examination:

Q: And you are aware, which had been preached many times at the school, about girls under 18 drinking liquor?

A: Yes, sir.

\* \* \* \* \* \*

Q: Were they permitted to [drink liquor]?

A: No girls of any age can drink liquor on the campus.

Q: That's a school rule?

A: Yes.

Q: What about girls off campus who are minors drinking alcohol? Is that permitted by the school?

A: No.

Q: As a matter of fact, it was grounds for automatic suspension of students, was it not?

\* \* \* \* \* \*

Q: Okay. So you were confronted with a situation [when three girls returned to the hall in intoxicated states] that you knew at the time would be automatic grounds for suspension ...?

A: Yes, sir.

---

1. We find no necessity to address the contract action based on the Deceptive Trade Practices

Act, TEX.BUS. & COM.CODE ANN. § 17.41 *et seq.* (Vernon Supp.1982–83).

Watts did not report the matter although she confirmed that she knew this was "wrong." She stated, "I went against my better judgment." She readily admitted she had no excuse for her action. Further she discussed the possibility of disciplinary action with the other two employees that same night, acknowledging she was aware of that possibility. She expected any disciplinary action would be against "girls, house directors, and assistants." She further testified that she would not have sued St. Mary's Hall had the other two employees been terminated as she was. She believed all should have received the same punishment.

Our first determination must be whether an employment contract for a term existed in this case. Although Watts stated she thought either party here could terminate the contract at any time, we hold the letter setting out the salary and the length of employment (1980–81 academic year) constituted a contract for a term. *See Bordeleau v. Universal Weather and Aviation, Inc.,* 629 S.W.2d 180, 182 (Tex.App.—Waco 1982, writ ref'd n.r.e.).

■ When the contract of employment is for a term, as opposed to "at will" the employer has the burden of showing good cause for the discharge. *Advance Ross Electronics Corp. v. Green, Jr.,* 624 S.W.2d 316, 318 (Tex.App.—Tyler 1981, no writ); *Langford v. Home for Aged Masons,* 617 S.W.2d 778, 780 (Tex.Civ.App.—Fort Worth 1981, no writ). The burden rests on the employee when the contract contains a "satisfaction" provision. (The discharge is wrongful because there is no showing of dissatisfaction with the services of the employee.) *Hardison v. A.H. Belo Corp.,* 247 S.W.2d 167, 168 (Tex.Civ.App.—Dallas 1952, no writ). In this case there is neither an "at will" nor a "satisfaction" provision in the employment contract. We find this is a term contract of employment.

■ The record shows that neither party pled good cause or lack of good cause, for the discharge of Watts; contrary to the pleadings, however, the record discloses evidence of trial of the good cause issue. Sim-

ilarly, "wrongful discharge" does not appear in the pleadings of either party, but this issue, too, was tried. *LaMarque Independent School District v. Thompson,* 580 S.W.2d 670, 673 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). *Whitley v. Whitley,* 566 S.W.2d 660, 662 (Tex.Civ.App. —Beaumont 1978, no writ). We hold the two issues were tried by consent in the present case. TEX.R.CIV.P. 301; 67.

■ If an employer wrongfully breached a contract for employment prior to complete performance, the employee may recover his salary due for the full term of the contract. *Dixie Glass Co., Inc. of Houston v. Pollak,* 162 Tex. 440, 347 S.W.2d 596 (1961). But if an employer is warranted in discharging the employee, the employee can not collect the salary accruing to him after the date of his discharge. *Advance Ross Electronics Corp. v. Green, Jr., supra* at 318–19; *Royal Oak Stave Co. v. Groce,* 113 S.W.2d 315, 317 (Tex.Civ.App.—Galveston 1937, writ dism'd).

■ Disobedience of reasonable rules of the employer that are known to the employee constitute a just ground for discharge. *Robertson v. Panhandle & S.F. Ry. Co.,* 77 S.W.2d 1078, 1079 (Tex.Civ.App.— Austin 1934, writ dism'd); *Swilley v. Galveston, H. & S.A. Ry. Co.,* 96 S.W.2d 105, 108 (Tex.Civ.App.—Galveston 1936, dism'd). While it may be a question of fact whether there exists circumstances to show good cause for the discharge of an employee, if the discharged employee's misconduct is undisputed and the effect on the employer's business is clear, the question of good cause is a matter of law. *Royal Oak Stave Co. v. Groce, supra* at 317.

■ Further, there is an implied obligation on the part of an employee to do no act which has a tendency to injure the employer's business or financial interest and a breach of this obligation will justify the employer in discharging the employee from his services. *Turner v. Byers,* 562 S.W.2d 507, 510 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Wildman v. Ritter,* 469 S.W.2d 446, 448 (Tex.Civ.App.—Tyler 1971, writ

ref'd n.r.e.); *Royal Oak Stave Co. v. Groce, supra* at 316.

■ An instructed verdict is proper only under these limited circumstances: 1) that a defect (specifically indicated) in the opponent's pleading makes it insufficient to support a judgment; 2) that the evidence proves conclusively the truth of fact propositions which, under the substantive law, establish the right of the movant, or negative the right of his opponent, to judgment; or 3) that the evidence is insufficient to raise an issue of fact as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Newitt v. Camden Drilling Co.,* 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ). 3 R. MCDONALD, TEXAS CIVIL PRACTICE § 11.28.1 (1983). It is proper, as a general rule, for the trial court to direct a verdict where there is no evidence to support a material fact issue. *Ottis v. Haas,* 569 S.W.2d 508, 512 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ A defendant will be entitled to an instructed verdict if *either* (a) in each theory of recovery relied upon by the plaintiff there is at least one fact proposition, constituting a component element, asserted by plaintiff, as to which the plaintiff's evidence is so meager or the defendant's evidence is so compelling that reasonable men could not differ as to the conclusion that such proposition is not established; or (b) each theory of recovery as to which plaintiff has raised an issue of fact on all component elements is destroyed by some affirmative defense applicable thereto as to which the truth of every component fact proposition asserted by the defendant has been so conclusively established that reasonable minds cannot differ. 3 R. MCDONALD, § 11.28.1 *supra.*

■ When reasonable minds may differ as to the truth of the controlling facts, a jury issue is present. *Najera v. Great Atlantic & Pacific Tea Co.,* 146 Tex. 367, 207 S.W.2d 365, 367 (1948). Unless the evidence was of such a character, when viewed most favorably to Watts' version, that there was no room for reasonable minds to differ as to the conclusions to be drawn from it, the court would not have been warranted in peremptorily directing a verdict. *Id.*

■ In this case Watts alone testified to the events of the evening and her decision not to report the incident. She admitted she knew the policies and rules of the school regarding that kind of infraction. She knew her duties as a house mother and that her failure to report the incident violated the rules of the school administration. Even though the trial court must discard all contradictory evidence favorable to the movant for an instructed verdict, it may consider uncontradicted evidence favorable to the movant. *Gutierrez v. Uribe,* 104 S.W.2d 569, 571 (Tex.Civ.App.—Fort Worth 1937, no writ). A party's testimonial declarations made during trial, which are contrary to his position (called quasi-admissions) will be treated as judicial admissions if the statements are deliberate, clear, unequivocal. *Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980). We treat the uncontradicted statements of Watts as judicial admissions. Her testimony established proof of good cause for her discharge. The defense of the employer, that is, good cause had been conclusively established as a matter of law. Further, the evidence, under the substantive law, established the right of St. Mary's Hall, the movant, to judgment and, on the other hand, negated the right of Watts to judgment.

We hold the trial court did not err in giving the peremptory instruction and affirm the judgment.