

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-17-00592-CV

**NORTH EAST INDEPENDENT SCHOOL DISTRICT** and Texas Commissioner of
Education,
Appellants

v.

Dehann **RIOU**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CI09958
Honorable Angelica Jimenez, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Irene Rios, Justice

Delivered and Filed:  July 25, 2018

AFFIRMED

This is an appeal from the district court's judgment reversing the Commissioner of

Education's decision to affirm North East Independent School District's ("NEISD") termination

of a teacher's continuing contract. In this appeal, we are asked to construe § 21.156 of the Texas

Education Code and determine what a school district must show when seeking to terminate a

teacher's continuing contract for good cause as defined by statute. We conclude § 21.156

unambiguously requires school districts to present evidence that similarly situated school districts

would consider the teacher's alleged conduct a failure to meet the accepted standards of conduct

for the teaching profession. Because NEISD did not present any such evidence in this case, we affirm the district court's judgment.[1]

## BACKGROUND

Dehann Riou started working for NEISD as a teacher in 2006. Beginning in 2010, Riou entered into a continuing contract with NEISD, meaning she was entitled to continued employment with NEISD unless, as relevant here, terminated for good cause as defined by statute. From 2006 to 2013, Riou worked at Stahl Elementary, teaching fifth grade for five years and third grade for one year. During her time at Stahl, Riou received positive reviews and scores of either exceeds expectations or proficient across every domain of her yearly performance evaluations ("summative evaluations"). In 2013, Riou was transferred from Stahl Elementary to Royal Ridge Elementary. After teaching fourth grade in 2013-14, Riou was assigned to teach kindergarten for the 2014-15 school year. On April 14, 2015, Riou went on unforeseen FMLA leave and was not released to return to work until August 11, 2015. On May 1, 2015, while on FMLA leave, Riou received her summative evaluation, in which Riou received below expectations in three categories, proficient in three categories, and exceeds expectations in two categories. In August 2015, upon reporting back to work after being released from FMLA leave, Riou received a letter from Royal Ridge Principal Deborah Jarvis-Hernandez informing Riou that Hernandez was going to recommend Riou for termination.

On September 15, 2015, the NEISD Board of Trustees ("school board") informed Riou of NEISD's proposal to terminate her contract for good cause. Riou requested a hearing before an

---

[1] On appeal from the district court NEISD contends Riou failed to exhaust administrative remedies, that the Commissioner's decision was supported by substantial evidence, and that the Commissioner did not err by concluding NEISD did not retaliate against Riou for taking FMLA leave and filing a grievance. Because the issue of whether the Commissioner's decision was supported by substantial evidence is dispositive of this appeal, we do not address NEISD's third issue. *See* TEX. R. APP. P. 47.1.

Independent Hearing Examiner ("IHE").[2] At the hearing, the IHE heard testimony from Riou, Hernandez, other Royal Ridge employees, and two parents whose children were in Riou's kindergarten class.

Although some evidence was presented regarding the 2013-14 school year, the vast majority of the evidence presented during the hearing related to Riou's performance as a kindergarten teacher during the 2014-15 school year. Hernandez testified that during the 2014-15 school year, Riou would show up late to work; did not submit documents on time; failed to properly assess students' academic progress, such as by failing to conduct reading benchmarks testing during the second and third grading periods; did not maintain the scope and sequence of learning objectives; and failed to electronically record students' checklist scores.[3] Hernandez explained that when she and other faculty entered Riou's classroom after Riou went on unexpected leave, she discovered Riou had not conducted any reading benchmark testing and had not electronically recorded students' checklist scores for the second and third grading periods, i.e., half the school year.

Hernandez explained that in kindergarten, teachers are not supposed to score students for every skill during every grading period because some skills are not taught until later grading periods. Hernandez testified that Riou failed to score students in the proper sequence despite being provided with documents created by the kindergarten team that provide instructions as to when certain skills needed to be scored and receiving reminders from both the school administration's curriculum department and the kindergarten team leader about grading deadlines. Hernandez

---

[2] A teacher whose continuing contract has been proposed for termination may request a hearing, which is conducted in the same manner as a bench trial. *See* TEX. EDUC. CODE ANN. §§ 21.159(b)(1); 21.251(a)(1); 21.256(c)-(e) (West 2012).

[3] At Royal Ridge, students in first through fifth grade receive report cards with letter grades every grading period. Kindergarten students, on the other hand, receive developmental checklists that use scores: –, /, +.

explained Riou had scored many skills that should not have been scored until later in the year, and although Riou scored some students for certain skills, for other students, Riou gave no score for the same skill. Hernandez testified that when she searched Riou's room, she did not find any hand-written datasheets or checklists indicating students' educational progress. As a result, the only academic record the school had for Riou's students was the first and fourth grading periods, the latter of which was assessed by the school's staff during Riou's FMLA leave. Additionally, because Riou's students received reading benchmark testing during the fourth grading period only, the school was unable to determine whether the students had progressed in their reading ability throughout the year.

NEISD presented evidence that Riou's failure to electronically record students' checklist scores each grading period, conduct reading benchmark testing during the second and third grading periods, and follow the district's scope and sequence for scoring students' skills amounted to violations of Royal Ridge and NEISD's policies. Because Riou was out on FMLA leave and because Hernandez considered Riou's failure to properly maintain students' academic records "a more serious situation than just conversation will fix," Hernandez did not give Riou an opportunity to correct her mistakes. Because of Hernandez's concerns about Riou, she recommended termination as opposed to placing Riou on a Teacher in Need of Assistance plan.

Riou testified she did not request to be assigned to teach kindergarten for the 2014-15 school year but was assigned to kindergarten by Hernandez when she returned from FMLA leave at the end of the 2013-14 school year. Riou testified she observed and recorded her students' progress, communicated with parents about their children's progress, and received only positive feedback from parents. Riou testified she did not know and was never informed that during certain grading periods she could not indicate on the checklists whether a student was mastering a skill. Riou explained she did not electronically record students' checklist scores for the second and third

grading periods because the data processor at Royal Ridge informed her she could handwrite the scores onto the checklists. Accordingly, Riou testified that for the second and third grading periods, she printed off the checklists, handwrote students' scores onto the printed checklists, and sent them home to the parents. Riou also explained she administered reading benchmark assessments to her students and handwrote students' reading levels on a printed form. When asked why she failed to score her students in the correct sequence throughout the school year, Riou testified the kindergarten checklist was confusing, she did not have help from her fellow kindergarten teachers, and she was not properly trained. Furthermore, Riou related she was "flabbergasted" and "really, really, surprised" by her evaluation scores, given that she had "never been reprimanded," "never been made aware of any of the concerns," and "just had no idea."

On January 5, 2016, the IHE issued written findings of fact and conclusions of law, recommending that Riou's continuing contract be terminated. The IHE found Riou's "failure to follow [NEISD's] policies, rules, regulations and administrative directives made it difficult or impossible for others to determine where the students were in terms of progress and had a significant detrimental effect on [NEISD's] obligation to provide a quality education to its students." Noting that "[a]ssessing students and documenting the results accurately, timely, and in the manner the school district requires is an essential obligation of a school teacher" and that Riou clearly violated a reasonable rule that had a clear effect on the school's business, the IHE concluded there was "good cause per se" to terminate Riou's continuing contract.

On January 21, 2016, after hearing oral arguments from counsel, the NEISD school board voted to adopt the IHE's findings of fact and conclusions of law and to terminate Riou's continuing contract for good cause. Riou filed a petition for review with the Texas Commissioner of Education. On March 31, 2016, the Commissioner signed an order affirming NEISD's decision to terminate Riou's continuing contract. The order noted "the central issue in this case is whether

there exists good cause per se to terminate [Riou's] contract." The order stated that the standard for determining whether good cause exists to terminate a continuing contract "normally requires testimony about standards in other similarly situated school districts"; however, it further stated no such testimony is needed if good cause per se exists. The order stated that to show good cause per se, a school district must show the teacher's conduct violated a reasonable district rule, the violation must be clear, and the violation had a clear effect on the district's business. The Commissioner concluded there was substantial evidence that Riou violated three of NEISD's rules; namely, administering reading benchmark assessments, following a specified scope and sequence of instruction, and entering grades electronically. The Commissioner concluded these rules were reasonable, Riou's violations of them were clear, and Riou's violations of NEISD's rules had a detrimental effect on NEISD's obligation to provide a quality education to its students.

Riou filed a petition in the district court seeking review of the Commissioner's decision to uphold Riou's termination, arguing, among other things, the Commissioner erred by failing to apply the statutorily-defined good cause standard for continuing contracts and that NEISD's decision to terminate Riou's contract was not supported by substantial evidence. After a hearing on the merits, the district court signed a final judgment finding that the Commissioner's decision was erroneous and not supported by substantial evidence. The final judgment reversed the Commissioner's decision and ordered that NEISD reinstate Riou and pay her back pay and benefits from the date of her termination to the date of her reinstatement.

Both NEISD and the Commissioner appeal the district court's judgment.

## STANDARD OF REVIEW AND APPLICABLE LAW

The Texas Education Code provides a teacher employed under a continuing contract is entitled to continue in the teacher's position or other position with the school district for future school years until she resigns, retires, is released from employment because of necessary reduction

of personnel, is returned to probationary status, or, as relevant here, "is discharged for good cause as defined by Section 21.156 and in accordance with the procedures provided in this chapter." TEX. EDUC. CODE ANN. § 21.154. "A teacher employed under a continuing contract may be discharged at any time for good cause as determined by the board of trustees, good cause being the failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts in this state." *Id.* § 21.156.

If a school district's board of trustees decides to terminate a teacher's continuing contract, the teacher may appeal to the Commissioner. *Id.* § 21.301(a). The Commissioner shall review the record of the hearing before the IHE and the oral argument before the school board, and "shall consider the appeal solely on the basis of the local record and may not consider any additional evidence or issue." *Id.* § 21.301(c). Where a school board terminates a teacher's continuing contract and accepts the IHE's findings of fact without modification, the Commissioner may not substitute the Commissioner's judgment for that of the school board unless the board's decision is "arbitrary, capricious, or unlawful or is not supported by substantial evidence." *Id.* § 21.303(b).

Either the school district or the teacher may appeal the Commissioner's decision to a judicial district court in the county in which the school district's central administrative offices are located. *Id.* § 21.307(a). The district court "may not reverse the decision of the commissioner unless the decision was not supported by substantial evidence or unless the commissioner's conclusions of law are erroneous," and may not reverse the Commissioner's decision based on a procedural irregularity or error unless the error "was likely to have led to an erroneous decision by the [C]ommissioner." *Id.* § 21.307(f), (g).

"On appeal of the district court's judgment, the focus of the appellate court's review, as in the district court, is on the decision of the Commissioner." *Goodie v. Houston Indep. Sch. Dist.*, 57 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). "A Commissioner's

decision may only be reversed on appeal if the decision is not supported by substantial evidence or the [C]ommissioner's conclusions of law are erroneous." *Wittman v. Nelson*, 100 S.W.3d 356, 359 (Tex. App.—San Antonio 2002, pet. denied); *see also* TEX. EDUC. CODE ANN. § 21.307(f). "[T]he Commissioner's reasoning for his decision is immaterial if his conclusion is correct"; thus, we will "uphold the Commissioner's decision on any legal basis shown in the record." *Goodie*, 57 S.W.3d at 650.

We "review the evidence on the evidentiary record made at the local level and any evidence taken by the commissioner but may not take additional evidence." TEX. EDUC. CODE ANN. § 21.307(e). "Under substantial evidence review, 'only more than a mere scintilla' of evidence is needed to support the Commissioner's decision." *Judson Indep. Sch. Dist. v. Ruiz*, No. 04-13-00706-CV, 2015 WL 1501758, at *3 (Tex. App.—San Antonio Mar. 31, 2015, pet. denied) (mem. op.) (quoting *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000)). "Although substantial evidence is more than a mere scintilla, the evidence in the record may preponderate against the agency decision and still amount to substantial evidence." *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.).

The issues raised in this appeal require us to construe the meaning of statutory text. "The construction of a statute is a question of law that we review de novo." *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011). "In construing statutes, our primary objective is to give effect to the Legislature's intent." *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, No. 16-0626, 2018 WL 1974485, at *4 (Tex. Apr. 27, 2018). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* When a statute is unambiguous, "we construe the statute's words according to their plain and common meaning." *Id.* We are also mindful that "words' meanings cannot be determined in isolation but

must be drawn from the context in which they are used," and in interpreting a particular provision, we consider how that provision fits within the statutory scheme. *Id.* at \*6.

Although this court gives "serious consideration" to the Commissioner's interpretation of a statute, the construction must be reasonable and must not conflict with the statute's language. *R.R. Comm'n of Texas v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). "[W]e have long recognized that an agency's[4] construction of a statute may be taken into consideration by courts when interpreting statutes, but *deferring* to an agency's construction is appropriate only when the statutory language is ambiguous." *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404-05 (Tex. 2016) (emphasis in original). "Agency deference has no place when statutes are unambiguous—the law means what it says—meaning we will not credit a contrary agency interpretation that departs from the clear meaning of the statutory language." *Tracfone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013). "We only resort to rules of construction or extrinsic aids when a statute's words are ambiguous." *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). "Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation." *Hegar*, 500 S.W.3d at 405.

## PRESERVATION OF ERROR

Riou contends the Commissioner's decision to affirm NEISD's termination of Riou's continuing contract is not supported by substantial evidence. Specifically, Riou argues that because § 21.156 defines good cause as "the failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts in this state," NEISD needed to present evidence of the standards of professional conduct recognized and applied

---

[4] The Texas Commissioner of Education is the head of the Texas Education Agency.

in other similarly situated school districts. *See* TEX. EDUC. CODE ANN. § 21.156. Integral to this contention is Riou's argument that the good cause per se doctrine employed by the IHE and the Commissioner conflicts with the statutory definition of "good cause" found in § 21.156.

NEISD[5] argues that Riou forfeited her argument that the wrong standard was used to determine whether good cause existed to terminate her contract because she failed to explain to the school board that the good cause per se standard used by the IHE improperly departs from § 21.156's definition of good cause. Accordingly, NEISD argues Riou failed to exhaust administrative remedies and should not be permitted to argue on appeal that the IHE and the Commissioner should not have used the good cause per se standard in determining that Riou's termination was sufficiently supported by the evidence.

We conclude NEISD's contention that Riou may not argue the insufficiency of the evidence because she did not articulate her specific argument regarding the application of the good cause per se doctrine before the school board is without merit. Riou's argument regarding the Commissioner's use of the good cause per se standard is part of her contention that the Commissioner's decision is not supported by substantial evidence. NEISD had the initial burden to present sufficient evidence that good cause under § 21.156 existed to terminate Riou's continuing contract. *See id.* § 21.256. Moreover, the Education Code provides that a teacher may appeal the school board's decision to the Commissioner, and the Commissioner may reverse the board's decision if it is "not supported by substantial evidence." *See id.* § 21.303(a). Likewise, the Code provides that a teacher may appeal the Commissioner's decision and argue that the decision is not supported by substantial evidence. *See id.* § 21.307(f). Despite NEISD's efforts to

---

[5] Both NEISD and the Commissioner filed briefs in this appeal. Because their positions and arguments are substantially similar, we refer to them together as "NEISD."

characterize Riou's argument as "rais[ing] the issue of good cause per se," Riou's contention is really a sufficiency of the evidence challenge—one that by statute she is entitled to bring.[6]

Furthermore, although Riou did not specifically explain to the board that NEISD failed to meet its burden by not presenting evidence of the standards generally recognized and applied in similarly situated school districts, Riou did argue to the board that NEISD failed to meet its burden to show good cause existed to terminate Riou's continuing contract. "Rules of error preservation should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case." *Adams v. Starside Custom Builders*, LLC, No. 16-0786, 2018 WL 1883075, at *5 (Tex. Apr. 20, 2018) (admonishing a court of appeals for "impos[ing] too strict a view of error preservation"). Riou raised as an issue at the board meeting NEISD's failure to show good cause existed to terminate her contract; she is not required on appeal to rely on precisely the same argument as that presented to the board. *See id.*; *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.") (emphasis in original).

In support of its contention that Riou failed to exhaust administrative remedies, NEISD cites to *O'Neal v. Ector Cty. Indep. Sch. Dist.*, which stated that if a state agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust administrative remedies before a judicial district court has jurisdiction over the dispute. 251 S.W.3d 50, 51 (Tex. 2008) (per curiam). There, a teacher filed a breach of contract action against the school district while the administrative proceedings regarding her termination were still ongoing. *Id.* In this case however, Riou has not

---

[6] It is also noteworthy that when the Commissioner considered Riou's appeal in the first instance, it did not conclude she failed to preserve her argument or exhaust administrative remedies, but rather reached the merits of her sufficiency challenge.

filed a cause of action relating to her contract during the pendency of the administrative proceedings, nor is she attempting to raise claims that she did not raise in the administrative proceedings below.

NEISD also cites to *Cedar Hill Indep. Sch. Dist. v. Gore*, No. 05-16-00460-CV, 2017 WL 2981970 (Tex. App.—Dallas July 13, 2017, pet. denied) (mem. op.). In that case, Gore, after attending the hearing before the IHE, did not attend or present argument to the school board when it met to consider the IHE's recommendations. *Id.* at *2. After the board voted to terminate his employment, Gore appealed to the Commissioner, who concluded Gore failed to exhaust administrative remedies when he did not present his arguments and objections to the board when it met to consider his case. *Id.* The Dallas Court of Appeals concluded reasonable minds could have reached the same conclusion as the Commissioner. *Id.* at *3. Unlike the employee in *Gore*, however, in this case, Riou *did* attend and participate in the board meeting by presenting oral argument.

The record shows that at every stage of the administrative proceedings, Riou argued NEISD failed to meet its burden to show good cause existed to terminate her continuing contract. We therefore conclude the issue of whether the Commissioner's decision is supported by substantial evidence is properly before us, and we may consider any of Riou's arguments in support of her contention. *See State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 275 (Tex. 2017) (holding agency's policy argument presented in administrative proceedings and statutory argument presented to the district court were both arguments to support a larger issue disputed by the parties, and thus agency was free to raise them at any time during administrative and judicial proceedings).

## COMMISSIONER'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Riou argues that because § 21.156 defines good cause as "the failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated

school districts in this state," NEISD needed to present evidence of the practice of other similarly situated school districts. *See* TEX. EDUC. CODE ANN. § 21.156. Riou argues that the good cause per se standard used by the Commissioner does not have any basis in the statutory text, which, according to Riou, requires that a school district affirmatively show how a teacher's overall work performance would be interpreted in other districts. Riou argues, and the Commissioner concedes, the record is devoid of any evidence as to "the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts." Riou therefore argues there is insufficient evidence in the record to support the Commissioner's decision to affirm her termination.

### Section 21.156 is Unambiguous

Section 21.156, which provides that a teacher under a continuing contract may be terminated for good cause, specifically defines "good cause" as the "failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts." *See* TEX. EDUC. CODE ANN. § 21.156. Applying the rules of statutory construction, we conclude § 21.156's definition of good cause yields only one reasonable interpretation: when a school district seeks to terminate a teacher under a continuing contract for good cause, it must present evidence that similarly situated school districts in this state would consider the teacher's alleged conduct a failure to meet accepted standards of conduct for the teaching profession. *See Hegar*, 500 S.W.3d at 405.

### Good Cause Per Se Standard Conflicts with Statute

NEISD argues this court should recognize an exception—good cause per se—to the statutory requirement that a school district seeking to terminate a teacher on a continuing contract show the teacher "fail[ed] to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts." *See id.*

The Commissioner's decision below was based on the application of the doctrine of good cause per se. In its written decision, the Commissioner wrote:

> Good cause to terminate a continuing contract is based on standards in similarly situated school districts. Hence, if a school district terminates a continuing contract for good cause, one would normally expect that there would be evidence in the record of standards in other school districts . . . The difficulty in the present case is that there is no evidence in the record of standards in other school districts . . . ***The limited exception to the requirement that there be evidence of standards in other school districts is good cause per se.*** There are situations when a teacher's actions are so extreme that there is no need to provide evidence of the standards in other districts because there can be no reasonable doubt that other similarly situated school districts would terminate teachers for the same behavior . . . To determine whether the doctrine of good cause per se applies to the present case, it is necessary to examine whether the rules at issue are reasonable; whether [the teacher] clearly violated the rules, and whether there was a clear business effect of the violations. (emphasis added).

This good cause per se exception utilized by the Commissioner in its decision and advocated by NEISD does not appear to have any basis in the relevant statutory text. Rather, the basis for the Commissioner's application of this doctrine appears to be this court's opinion in *Watts v. St. Mary's Hall*. 662 S.W.2d 55, 57 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). In *Watts*, a former residential director sued a private school for breach of employment contract. *Id.* at 57. Because the director was employed under a term contract, the private school had to show good cause to terminate the director's employment. *Id.* at 58. This court stated, "if the discharged employee's misconduct is undisputed and the effect on the employer's business is clear, the question of good cause is a matter of law." *Id.*

The Commissioner's reliance on *Watts* is misplaced. This court's opinion in *Watts* does not support the Commissioner's application of the good cause per se doctrine in this case because *Watts*, unlike this case, did not involve an employment contract with a governmental unit that is governed by statute and administrative law. There is not any basis for applying *Watts*'s common

law good cause per se standard to cases such as this, where termination of Riou's statutorily authorized continuing contract is governed by a statutorily defined good cause standard.

NEISD points out that this is not the first time the Commissioner has applied a good cause per se standard in a continuing contract case. In *Ramirez v. Edgewood Indep. Sch. Dist.*, a teacher whose continuing contract was terminated by a school district contended the Commissioner's decision to affirm her termination was not supported by substantial evidence because there was no evidence the teacher's actions violated the standards of any particular school district similar to hers. No. 04-00-00137-CV, 2001 WL 22043, at \*4 (Tex. App.—San Antonio Jan. 10, 2001, pet. denied) (not designated for publication). In addressing this contention, this court stated as follows:

> [T]he Commissioner relied on prior decisions in which testimony regarding the standards of similar districts was not required. The Commissioner noted that, in these cases, the teachers' failings were so great there was no need to provide testimony concerning standards in similar districts or to justify termination in similar districts . . . The Commissioner concluded that . . . incompetence is per se grounds for termination, and there is no need to present witnesses to testify that similarly situated school districts would terminate an incompetent teacher. We cannot conclude that this decision was arbitrary, capricious, or without regard to the facts.

*Id.*[7] The *Ramirez* opinion, however, did not analyze or discuss whether the Commissioner's application of the good cause per se doctrine improperly conflicted with the plain language of the statute. Rather, this court merely noted the standard used by the Commissioner, and then concluded that the Commissioner's ultimate decision to affirm the teacher's termination was not arbitrary, capricious, or without regard to the facts. *See id.* We conclude *Ramirez* does not provide a

---

[7] *Ramirez*, as a 2001 unpublished opinion, has no precedential value and is not binding authority on this court. *See* TEX. R. APP. P. 47.7. *See Brooks v. CalAtlantic Homes of Texas, Inc.*, No. 05-16-01203-CV, 2017 WL 4479651, at \*6 n.4 (Tex. App.—Dallas Oct. 9, 2017, pet. filed) (mem. op.); *Alcala-Garcia v. City of La Marque*, No. 14-12-00175-CV, 2012 WL 5378118, at \*7 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet.) (mem. op.); *Fox v. State*, No. 04-15-00618-CR, 2017 WL 96160, at \*3 (Tex. App.—San Antonio Jan. 11, 2017, no pet.) (mem. op., not designated for publication) (recognizing that under Rule 47.7, an opinion not designated for publication by a court of appeals has no precedential value even for the court of appeals that issued the opinion); *see also Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd). ("By stating that unpublished opinions may be cited but have no precedential value, we perceive the intent of [Rule 47.7] to be that a court has no obligation to follow such opinions.").

persuasive rationale for the Commissioner's use of *Watts*'s good cause per se doctrine in the context of continuing contract terminations that are governed by § 21.156 and does not assist this court in determining whether good cause per se conflicts with the plain meaning of § 21.156.

According to the good cause per se standard as articulated by the Commissioner, good cause exists if a teacher clearly violated a reasonable policy of the district, and the violation had a clear effect on the district's "business" of educating students. This standard would allow a finding of good cause based on a teacher's failure to abide by the district's policies alone, without any inquiry as to whether violations of those policies would be a failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts, which is what the plain language of § 21.156 requires. We cannot defer to the Commissioner's traditional interpretation and application of a statute when that interpretation directly conflicts with the statutory text. *See Tracfone Wireless*, 397 S.W.3d at 182; *R.R. Comm'n of Texas*, 336 S.W.3d at 624. "When a statute provides a definition, we must apply it." *Martinez*, 539 S.W.3d at 270. Accordingly, we conclude the Commissioner's good cause per se standard conflicts with the statutory language of § 21.156, and thus may not be used in determining whether good cause exists to terminate a teacher under a continuing contract.

**Good Cause Based on Violation of Law is Another Formulation of Good Cause Per Se**

NEISD contends the evidence is sufficient to satisfy § 21.156's good cause definition because the evidence shows Riou failed to perform tasks Texas law requires of teachers generally. NEISD argues state law requires teachers to assess student performance, administer reading benchmark assessments, and record grades, and thus these requirements are generally accepted standards of conduct for the teaching profession throughout the state.

NEISD cites the following statutes and regulations relating to assessing student performance, administering reading benchmark assessments, and recording grades:

TEX. EDUC. CODE ANN. §§ 28.0216; 28.021(c) (requiring school districts to "adopt a grading policy, including provisions for the assignment of grades on class assignments and examinations," which "must require a classroom teacher to assign a grade that reflects the student's relative mastery of an assignment," and requiring school districts to consider, when determining whether to promote a student to the next grade level, students' grades);

TEX. EDUC. CODE ANN. § 28.006(c), (g) (requiring school districts to administer, at the kindergarten and first and second grade levels, a reading instrument to diagnose student reading development and comprehension and to help identify students with dyslexia or other reading difficulties);

TEX. EDUC. CODE ANN. § 11.164 (providing a teacher may be required to report a student's grades at the end of each grading period);

19 TAC § 74.5(b)(4), (c) (requiring school districts to keep records showing the record of courses and credits earned to ensure that copies of a student's academic record are available for a student transferring from one district to another).

None of the statutes and regulations relied on by NEISD place requirements on teachers specifically. The statutes and regulations cited by NEISD do not address how public school teachers throughout the state should assess student achievement or assign grades, how often and by whom reading benchmarks should be administered, or whether a teacher must record grades in an electronic database. Rather, they place requirements on school districts generally, leaving the method of compliance to the discretion of each school district.[8]

Moreover, NEISD's argument that a school district may satisfy § 21.156 by presenting evidence that the teacher violated specific statutory directives aimed at public school teachers statewide is merely a different iteration of the good cause per se standard—one that focuses not on a clear violation of district policy, but on a clear violation of a statutory provision. Although such a showing may be informative as to the expectations similarly situated school districts have of their teachers, it still would not satisfy the plain language of § 21.156's good cause definition,

---

[8] NEISD also cites a federal provision that requires states to adopt policies and procedures to identify, locate, and evaluate all children with disabilities residing in the state. *See* 20 U.S.C. § 1412(a)(3). This provision does not place any specific requirements on Texas teachers.

which requires a school district seeking to terminate a teacher under a continuing contract to present evidence that similarly situated school districts would consider the teacher's alleged conduct to be a failure to meet the accepted standards of conduct for the teaching profession. Furthermore, even if a school district could satisfy § 21.156 by presenting evidence that the teacher violated specific statutory directives aimed at public school teachers statewide, NEISD did not show at the hearing that Riou's conduct violated state law.

## CONCLUSION

Section 21.156 requires school districts to present evidence that similarly situated school districts would consider a teacher's conduct to be a failure to meet the accepted standards of conduct for the teaching profession. NEISD did not present any evidence at the hearing showing how similarly situated school districts would view Riou's conduct. Therefore, the Commissioner's decision was not supported by substantial evidence.

Accordingly, we affirm the judgment of the district court.

Irene Rios, Justice